Office of Disciplinary Counsel *v.* Baumgartner.

**[Cite as *Disciplinary Counsel v. Baumgartner,*
100 Ohio St.3d 41, 2003-Ohio-4756.]**

(No. 2002–2237—Submitted March 25, 2003—Decided September 24, 2003.)

**Per Curiam.**

{¶ 1} Respondent, Elsebeth M. Baumgartner of Oak Harbor, Ohio, Attorney Registration No. 0064583, was admitted to the practice of law in Ohio in 1995. In an amended complaint filed on March 1, 2002, relator, Disciplinary Counsel, charged respondent with professional misconduct, including allegations that she made numerous unfounded accusations of criminal and unethical activity against private individuals and public officials and also compromised her clients' interests. Respondent answered, denying any misconduct, but admitting that she had accused various judges, prosecutors, law enforcement officials, and members of the local school system, among others, of wrongdoing to expose what she considered to be public corruption. On February 1, 2002, we suspended respondent's license to practice law on an interim remedial basis based on substantial evidence that she had violated the Code of Professional Responsibility and posed a threat of serious harm to the public. *Disciplinary Counsel v. Baumgartner* (2002), 94 Ohio St.3d 1447, 762 N.E.2d 366.[1] See Gov.Bar R. V(5a).

{¶ 2} The Board of Commissioners on Grievances and Discipline appointed a three-member panel to hear the cause and make findings of fact, conclusions of law, and a recommendation. Prior to the hearing, the parties conducted extensive discovery, filed numerous motions, and participated in four prehearing conferences at which the panel chairperson presided. Respondent was represented by counsel during these proceedings until August 2002, when she discharged her attorney and the chairperson granted the attorney leave to withdraw.

{¶ 3} Proceeding on her own behalf, respondent submitted her witness list in anticipation of the panel hearing. The list identified over 250 witnesses. Relator

---

1. We denied respondent's motion to dissolve the interim suspension on April 23, 2002. *Disciplinary Counsel v. Baumgartner* (2002), 95 Ohio St.3d 1430, 766 N.E.2d 996.

filed a motion to limit the number of respondent's witnesses and also a motion that respondent submit to a psychological examination, both of which the chairperson considered at the final prehearing conference. After considerable review, the chairperson determined that the majority of respondent's witnesses had no direct knowledge even arguably relevant to the disciplinary proceeding; however, he granted respondent authority to obtain subpoenas for over 70 of these witnesses, providing that she filed a proper praecipe. The chairperson took the psychiatric examination request under advisement pending the receipt of records from respondent's treating psychologist, which respondent agreed at that time to make available.

{¶ 4} Respondent thereafter appeared at the panel hearing, but only briefly and only after she had just filed a federal lawsuit against the panel chairman, Disciplinary Counsel in his individual capacity, and various others she claimed to be involved in the extensive public corruption identified in her answer to the amended complaint.[2] Arriving late, respondent informed the panel of her federal complaint, but refused to sit at counsel table. Shortly thereafter, respondent turned her back to the panel and abruptly left the hearing room. The hearing proceeded in her absence.

{¶ 5} The events underlying the charged misconduct began in 1999 after two incidents in which respondent believed that her daughter had been mistreated while a member of the Oak Harbor High School track and field team. In February of that year, the daughter had an argument with one of the school's coaches about using the weight room. In the spring of 1999, another coach replaced respondent's daughter with a teammate in a track relay event. Respondent reacted by publicly accusing the coach involved in the weight room argument of having committed criminal acts during the incident, including what respondent would later refer to as a physical and psychological assault of her daughter.

{¶ 6} With respect to Count One of the complaint, the evidence shows that respondent asserted these charges at a meeting of the Benton Carroll Salem Board of Education, on which her husband serves. In response, the superintendent of the school district duly reported the allegations to local law enforcement. The Oak Harbor Police Chief turned over the results of his investigation to the Ottawa County Prosecutor, who agreed with the chief that there was no evidence to warrant formal charges or prosecution. Dissatisfied with this decision, respondent swore out a series of affidavits and, on November 21, 2000, filed them in the

---

2. Respondent's lawsuit has since been dismissed. In that decision, the federal district judge took judicial notice of the facts that respondent had been convicted of falsification in July 2002, after which she was sentenced to jail, eventually released, and then jailed again in September 2002 for violating the terms of her probation, but released to attend the disciplinary hearing.

Ottawa County Municipal Court along with her own "citizen's" complaint. See Crim.R. 4(A)(1) (complaint based on credible affidavit may present probable cause for summons or arrest warrant).

{¶ 7} Respondent's complaint and affidavits accused eleven individuals—the Ottawa County Prosecutor, the Oak Harbor and Put–in–Bay chiefs of police, the school superintendent and his predecessor, and the six members of the board of education—of various felony and misdemeanor crimes, including intimidation, dereliction of duty, theft in office, obstructing justice, retaliation, tampering with evidence, assault, menace by stalking, and falsification. A special prosecutor, whose appointment respondent unjustifiably alleged to be the result of an unlawful conspiracy, investigated respondent's charges but found no credible evidence to support them. In fact, various officials have repeatedly asked respondent for evidence to substantiate her charges; however, she has never provided any proof other than her own sworn statements, and these have been categorically denied by those respondent accused, most significantly at the panel hearing under oath.[3] Thus, the special prosecutor has not filed charges relating to any of respondent's allegations, nor have federal law enforcement authorities to which respondent also reported her charges.

{¶ 8} With respect to Counts Two, Three, Five, Seven, and Eight, relator proved that respondent has also made countless other accusations for which she has no credible proof. In correspondence to various individuals commencing with a January 5, 2001 letter to the Board of Commissioners of Ottawa County, respondent asserted on her daughter's, husband's, or her own behalf a barrage of corruption and conspiracy charges, among other crimes, against area judges, prosecutors, law enforcement officers, attorneys, school board members, and others, many of whom also testified to the falsity of these charges during the panel hearing. Respondent sent one such letter to a juvenile court judge before whom a client's case was pending and with whom she also improperly discussed the merits of the client's case.

{¶ 9} Moreover, respondent made similar false allegations in documents she either filed or attempted to file in court, always using her status as an attorney and at times compromising the cases of her clients, to further what can only be described as a vendetta. Respondent has also made disparaging and unfounded personal attacks against judges, prosecutors, and others in the community and often filed lawsuits, without any discernible cause, against individuals she had already charged with criminal or unethical activity. In July 2002, respondent was convicted of falsification for making such public accusations of impropriety.

---

3. Two of the individuals respondent accused in her complaint did not testify. Respondent did not attach an affidavit against the first of these individuals to the complaint. The second individual was subpoenaed by relator but did not testify for reasons not clear from the record.

{¶ 10} Consistent with the findings of the panel and board, we conclude from this evidence that respondent violated DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice), 1–102(A)(6) (engaging in conduct that adversely reflects on an attorney's fitness to practice law), 7–102(A)(1) (taking legal action on behalf of a client to merely harass or maliciously injure another), 7–102(A)(2) (knowingly advancing a claim or defense that is unwarranted under existing law), 7–102(A)(5) (making a false statement of law or fact), 7–106(C)(1) (while appearing in a professional capacity, stating matters that the attorney has no reasonable basis to believe are relevant or capable of corroboration through admissible evidence), 7–110(B) (communicating ex parte with the judge in a pending case), and 8–102(B) (knowingly making a false accusation against a judge or other adjudicatory officer), and Gov.Bar R. IV(2) (failure to maintain respectful attitude toward the courts).

{¶ 11} However, we do not find that respondent violated DR 3–101(B) (practicing law in violation of regulations applicable in the jurisdiction) as the panel and board did in connection with Count Eight. Relator additionally alleged in Count Eight that respondent practiced law in violation of our interim suspension order. We have since heard the parties on this issue in contempt proceedings and did not find respondent in contempt of our order. *Disciplinary Counsel v. Baumgartner* (2002), 95 Ohio St.3d 1402, 765 N.E.2d 871. Accordingly, we dismiss this charge against respondent.

{¶ 12} With respect to Count Four, the evidence shows that in May 1999, respondent sent menacing e-mails to the superintendent and a high school track coach in an attempt to have her daughter put back in the track relay event. In the e-mails, respondent threatened criminal prosecutions and civil lawsuits, none with any apparent basis, if these school officials did not accede to her demand. Later, in March 2000, respondent attempted to intimidate the school board president and vice-president, warning them by letter that she had filed a criminal complaint of conspiracy and harassment against them. In July 2000, respondent sent another letter, this one on her husband's behalf to the school board treasurer, in which she asserted further unfounded allegations of conspiracy against school administrators, board members, and attorneys hired to represent them.

{¶ 13} Consistent with the findings of the panel and board, we conclude from this evidence that respondent violated DR 1–102(A)(4), 1–102(A)(5), and 1–102(A)(6).

{¶ 14} With respect to Count Six, the evidence shows that in December 2000, an acquaintance of respondent filed two citizen's complaints in the Defiance County Municipal Court: one against a Defiance County commissioner for theft

in office and theft by deception, the other against the Defiance County Prosecutor for dereliction of duty. A visiting judge was appointed and, on motion of the Defiance City Law Director, that judge dismissed the cause for lack of credible evidence. The complainant did not pay ordered court costs, and the visiting judge issued a show-cause order requiring her to appear on February 7, 2001.

{¶ 15} On February 6, 2001, respondent called the regular municipal judge and asked for a continuance of the hearing, advising that she was the complainant's attorney and had the flu. The judge explained that he could not grant a continuance because the case had been reassigned to a visiting judge who was coming in to hear it. On February 7, respondent appeared without her client and lied to the visiting judge. She told him that the Defiance County Prosecutor had been removed as special prosecutor in the citizen's complaint she filed in Ottawa County because he had been linked to the corruption there. In truth, the Defiance County Prosecutor had asked to withdraw from the Ottawa County case for a legitimate reason, had been granted leave to withdraw, and another special prosecutor either had been or was to be appointed. At the close of the hearing, the visiting judge issued a warrant for the arrest of respondent's client for failure to appear.

{¶ 16} Respondent and her client later appeared together at a February 16, 2001 contempt hearing. Again before the visiting judge, respondent this time accused the regular municipal judge of having denied her request for a continuance of the February 7 hearing and having threatened her with "trouble" if she did not appear in court. The visiting judge found no merit in respondent's charges and cited her client for contempt for her previous failure to appear.

{¶ 17} After the hearing that day, respondent filed her own affidavits in Defiance County Common Pleas Court, alleging that the regular municipal judge and the law director had improperly influenced the dismissal of charges against the county prosecutor and commissioner. The affidavits sought the arrests or prosecutions of the judge and law director for obstruction of justice. A special prosecutor was appointed to the cause, as was another visiting judge. On the special prosecutor's motions, that visiting judge dismissed respondent's affidavits as unauthorized and unfounded, even ordering the affidavits stricken. The regular municipal judge and law director also denied the charges under oath at the panel hearing.

{¶ 18} Consistent with the panel's and board's findings, we conclude from this evidence that respondent violated DR 1–102(A)(4), 1–102(A)(5), 7–102(A)(1), 7–102(A)(2), 7–102(A)(5), and 8–102(B), and Gov.Bar R. IV(2).

{¶ 19} With respect to Count Nine, the evidence shows that respondent agreed to provide in-house legal services part-time for a biotechnology company at a salary of $5,000 per month. The owner of the company, a physician, scientist,

and university professor, had had some prior affiliation with respondent and also leased office space from her. Testifying at the panel hearing, the owner and former client explained that respondent had promised to begin work in-house on February 15, 2001, but never appeared and never performed any work for him after that date. He attributed respondent's desertion and earlier inability to complete various work assignments to her distraction with investigating the corruption she perceived in Oak Harbor and elsewhere.

{¶ 20} Over the following months, respondent wrote to this client demanding $15,000 for her professional services and other claims. She continued to inflate this demand through a series of subsequent letters until she ultimately asked for $500,000. In one of her letters, respondent threatened to reveal valuable trade secrets and other confidences to her client's competitors if her demands were not met.

{¶ 21} Consistent with the panel's and board's findings, we conclude from this evidence that respondent violated DR 1–102(A)(4), 1–102(A)(5), 2–106(A) (charging an excessive fee), 4–101(B)(2) (using a client's confidence to the client's disadvantage), and 4–101(B)(3) (using a client's confidence to the attorney's advantage).

{¶ 22} With respect to Count Ten, the evidence shows that in January 2002, respondent filed a notice of appearance and motion for a continuance in an Ottawa County juvenile delinquency case purportedly on the juvenile's behalf, but without the consent of the juvenile or his mother. The counsel of record in the case also did not know of or consent to respondent's filings. Thereafter, the attorney of record attempted to withdraw her representation, and the juvenile court continued a hearing in the cause until February 6, 2002, to allow counsel and the client to sort out the situation.

{¶ 23} At the February 6 hearing, the juvenile's mother, who is learning-disabled, filed a "pro se" response to the withdrawal motion that she later admitted respondent helped her to prepare.[4] Attached to the motion was respondent's affidavit in which she accused the juvenile court judge and the prosecuting attorney of various crimes and ethical violations, all related to her theories of conspiracy and corruption. At the panel hearing, the judge and prosecutor denied any such activity.

{¶ 24} Consistent with the panel's and board's findings, we conclude from this evidence that respondent violated DR 1–102(A)(2) (attempting to circumvent a Disciplinary Rule through the actions of another), 1–102(A)(4), and 1–102(A)(5).

---

4. Although this hearing occurred after our interim order suspending respondent's license, we did not find her conduct during the hearing to be contumacious. *Disciplinary Counsel v. Baumgartner* (2002), 95 Ohio St.3d 1402, 765 N.E.2d 871.

{¶ 25} With respect to Count Eleven, the panel and board found several disciplinary violations related to respondent's continuing to represent clients for a short period after the interim suspension of her law license. Specifically, respondent wrote a letter, purportedly as counsel for the juvenile referred to in Count Ten, to excuse his absence from school to attend the February 6, 2002 hearing. These issues were resolved in *Disciplinary Counsel v. Baumgartner* (2002), 95 Ohio St.3d 1402, 765 N.E.2d 871, in which we did not find respondent in contempt. Accordingly, we dismiss Count Eleven.

{¶ 26} In recommending a sanction for this misconduct, we first consider the mitigating and aggravating factors found by the panel and board. Consistent with those findings, we share the concern that respondent, who is apparently also a licensed pharmacist and has no history of professional disciplinary sanctions, may suffer from some mental illness or other disability that is compromising her professional judgment and contributing to the misconduct in this case. Despite considerable encouragement, however, respondent ultimately decided against providing evidence from her treating psychologist. Accordingly, we cannot temper our disposition based on the potentially significant mitigating effect of what may be respondent's medical condition.

{¶ 27} The panel and board identified numerous aggravating considerations, including "dishonest or selfish motive," "pattern of misconduct," and "multiple offenses." See Section 10(B)(1) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline. We also conclude that respondent's misconduct manifested a seemingly inexhaustible campaign to retaliate against anyone and everyone who defied her. From high school coaches who refused to be bullied at the expense of the team to public officials whose integrity she attacked if they resisted her demands, respondent threatened to unleash on them all the power and privileges she enjoyed as a licensed attorney. And in the thick of her vendetta, respondent attempted to extort money from a client for her own financial gain.

{¶ 28} The panel and board also found that respondent did not cooperate in and resorted to deceptive practices during the disciplinary process, refused to acknowledge the wrongful nature of her conduct, harmed particularly vulnerable clients and others, and made no attempts to offer restitution. See Section 10(B)(1) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline. Upon review, we find ample evidence to support all of the following findings by the panel and board:

{¶ 29} "Respondent repeatedly promised to provide the numerous documents she claimed to have to support her allegations, but never provided any; attempt-

ed to pervert the disciplinary case into the next phase of her campaign of paper terrorism against public officials by [requesting] subpoenas to be issued merely to harass individuals with no involvement in her case and [to] interfere with its timely and orderly resolution; engaged in egregiously unprofessional behavior at prehearing conferences including [making] ad hominem accusations against the panel chair and others * * *; and refusing to participate in the hearing, disregarding a direct request from the panel chair to be seated at the trial table and walking out of the hearing.

{¶ 30} "* * * Respondent repeated her false accusations against the numerous judges and public officials during the disciplinary process in her personally prepared, signed, and filed motions, affidavits and statements made on the record at the final pre-hearing conference.

{¶ 31} "* * * Respondent admitted almost all of the facts but never acknowledged that any of her conduct was even arguably contrary to the ethical standards of Ohio lawyers. In addition, she persistently denied the authority of the panel, the board and the Ohio Supreme Court to regulate her conduct as a lawyer.

{¶ 32} "* * * Respondent's victims were highly vulnerable to her course of misconduct. The nature and wording of her charges against the judges and public officials were calculated to generate the maximum media attention in a relatively small community and to inflict the maximum damage on these public officials. The school employees and board members could not effectively defend against her accusations without engaging counsel, either at personal or public expense. The school district was effectively paralyzed for a period of years by the numerous unfounded accusations, investigations and lawsuits. The clients whose cases respondent took over to press her own agenda were juvenile, women of diminished capacity or prison inmates who were misled and then left in worse circumstances than when she found them.

{¶ 33} "* * * There is no evidence that respondent has ever attempted to make restitution for the financial costs of the misconduct to her victims. On the contrary, the evidence is clear and convincing that her pattern of misconduct continues, as she filed a federal lawsuit on the day of her disciplinary hearing against many of the same individuals whom she had previously victimized and who were subpoenaed to testify against her (most of whom she had listed as her witnesses as well)."

{¶ 34} Considering the overwhelming evidence of her misconduct, both the panel and the board recommended that respondent be permanently disbarred.

{¶ 35} In a list of 18 objections to the board's report, respondent asserts that various errors and denials of due process occurred during the disciplinary proceeding. Her objections are succeeded by 6 propositions of law. Some of

these objections and propositions are lucid, others are sweeping and devoid of detail, and some are simply nonsense, usually complete with outrageous accusations characteristic of those on which this complaint is largely based. Thus, we review only those objections and propositions that are amenable to rational analysis.

{¶ 36} Respondent initially claims a violation of Gov.Bar R. V(4)(D) (a disciplinary investigation is to be completed within 60 days after the filing of a grievance, unless an extension is granted for good cause, and the disposition is to be decided within 30 days of the close of the investigation). Relator represents that the grievance against respondent was filed on March 7, 2001, that a timely requested extension to conclude the investigation was granted until July 23, 2001, and that respondent was provided written notice of the complaint within 30 days. Respondent does not assert, much less demonstrate, that she was prejudiced by these efforts. Gov.Bar R. V(4)(D)(3) requires a showing of prejudice before a grievance may be dismissed. Therefore, we overrule this objection.

{¶ 37} Respondent also claims that her discovery was unfairly restricted. The parties were given ample opportunity to depose witnesses and formally request other information; however, all their efforts were subject to the panel chairperson's scrutiny on motions to quash or other objections as to relevance. Gov.Bar R. V(6)(D)(3); Civ.R. 26(B). Respondent cites no example with which we can agree that the chairperson improperly denied her access to relevant evidence. Accordingly, this objection is overruled.

{¶ 38} Respondent further complains that she was not provided notice when transcripts were filed and that our interim suspension order did not specify findings of fact and conclusions of law signed by all the justices. Respondent cites no notice requirement applicable in these proceedings, nor does she cite authority suggesting that our interim order, assuming arguendo that it can be contested at this juncture, was insufficient. These objections, therefore, are overruled.

{¶ 39} Respondent additionally asserts our lack of jurisdiction on the ground that she was not served with "a Copy of the Complaint filed with the Supreme Court." Respondent was served and answered the original and amended complaints in this cause. She was not entitled to service of these pleadings again when the board filed its report to this court pursuant to Gov.Bar R. V(6)(L). Accordingly, we overrule this objection.

{¶ 40} Respondent next objects to the fact that two panel members resided in Cuyahoga County, where incidents charged in Counts 8 and 9 of the amended complaint took place. Indeed, under Gov.Bar R. V(6)(D)(3), no one who is a resident of the appellate district from which the complaint "originated" may serve on a hearing panel. Relator claims that this complaint originated in Ottawa

County because the misconduct alleged in the initial version of the complaint occurred there. We, however, do not read Gov.Bar R. V(6)(D)(3), which is intended as prophylactic against bias among local professionals, so narrowly. Relator, however, also insists that the disciplinary process cannot be considered compromised for a failure to comply with Gov.Bar R. V(6)(D)(3) unless respondent has shown bias or prejudice, which she has not. We agree. The objection is therefore overruled.

{¶ 41} Again assuming arguendo that our interim suspension order may be contested at this stage, we also overrule respondent's objections that she was not permitted to present and confront witnesses in that proceeding or this one. Gov.Bar R. V(5a) provides for argument and evidence in response to relator's motion for the interim suspension, and she submitted both. Moreover, while respondent asserts that she was denied the opportunity to defend herself at the panel hearing and that the panel presumed that her affidavits and other "writings" were false, neither of these assertions is true.

{¶ 42} Also untrue is respondent's assertion that the witnesses at the panel hearing were either incompetent or perjurers. Nothing in this record supports a finding that the witnesses did not honor their oaths. This objection is therefore overruled.

{¶ 43} Respondent further objects to the panel chairperson's appointment, citing a conflict of interest. Several years before the panel hearing, the chairperson was appointed as a special prosecutor to investigate suspicions of criminal activity involving the brother of the Erie County Prosecutor. Respondent is acquainted with the Erie County Prosecutor's brother, and she asserts that the brother has knowledge of corruption in that county.

{¶ 44} The chairperson, whose investigation did not result in any charges or report, advised the parties early on during these proceedings of his special-prosecutor appointment because the Erie County Prosecutor and his brother were possible witnesses in this case. In fact, the Erie County Prosecutor was one of the officials respondent had accused of corruption, and he did testify. The chairperson relayed this information before the prosecutor's deposition, conducted on June 19, 2002, after which "[r]elator and respondent's counsel, with respondent present and participating, acknowledged that they were fully aware of the circumstances, expressed their satisfaction with [the panel chair], declined to request recusal, and remitted any disqualification relating to his former status as special prosecutor in Erie County."

{¶ 45} In reviewing the record, we find no evidence that the chairperson acted with bias prior to or during the panel hearing. Moreover, respondent, while represented by counsel, consented to his participation. We thus overrule this objection.

{¶ 46} Finally, the gravamen of respondent's remaining arguments is that disbarment is an unjust and unlawful sanction for what she describes as "whistle blowing," that is, her efforts to report and combat corruption. We disagree. Respondent has made innumerable false accusations of wrongdoing that a reasonable attorney in her situation would know were false. There is no protection for such statements and attorneys are subject to discipline for them. *Disciplinary Counsel v. Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425. Moreover, when an attorney repeatedly harms her clients' interests, manipulates the legal system to harass and intimidate, and publicly accuses dozens of people of criminal wrongdoing, our constitutional duty to regulate the legal profession for the public's protection compels us to impose the most extreme sanction: disbarment.

{¶ 47} Accordingly, we adopt the board and the panel's recommendation. Respondent is hereby permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., KLINE, F.E. SWEENEY, PFEIFER, FAIN, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

ROGER L. KLINE, J., of the Fourth Appellate District, sitting for RESNICK, J.

MIKE FAIN, J., of the Second Appellate District, sitting for COOK, J.

———————

Jonathan E. Coughlan, Disciplinary Counsel, and Lori J. Brown, First Assistant Disciplinary Counsel, for relator.

Elsebeth M. Baumgartner, pro se.