DISCIPLINARY COUNSEL *v*. FROST.

[Cite as *Disciplinary Counsel v. Frost*, 122 Ohio St.3d 219, 2009-Ohio-2870.]

*Attorney misconduct, including engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, engaging in conduct prejudicial to the administration of justice, and knowingly making false accusations against a judge — Indefinite suspension.*

(No. 2009-0069 — Submitted March 25, 2009 — Decided June 24, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 07-079.

_____

**Per Curiam**.

{¶ 1} Respondent, Merrie Maurine Frost of Cleveland Heights, Ohio, Attorney Registration No. 0059642, was admitted to the practice of law in Ohio in 1992.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we indefinitely suspend respondent's license to practice, based on findings that she filed in court false accusations of bias and corruption against judges and a county prosecutor and also persisted in pursuing a baseless defamation suit. We accept the board's findings and agree that the acts constituted professional misconduct as found by the board and that an indefinite suspension of respondent's license is appropriate. Moreover, to safeguard the public, we order as one condition of reinstatement that respondent provide medical proof that she is mentally fit to return to the competent, professional, and ethical practice of law.

{¶ 3} Respondent, Disciplinary Counsel, charged respondent with three counts of professional misconduct, alleging multiple violations of the Disciplinary

Rules of the former Code of Professional Responsibility and Gov.Bar R. IV(2) (requiring lawyers to maintain a respectful attitude toward the courts). A panel of board members heard the case, made findings of fact and conclusions of law, and recommended the indefinite suspension of respondent's license. The board adopted the panel's findings of misconduct and recommendation.

{¶ 4} Respondent has objected to the board's report, arguing that an indefinite suspension from practice is too harsh in view of her heretofore unblemished professional record. And rather than attack the board's findings of misconduct as unfounded, she asserts that charges she made alleging corruption and bias are constitutionally protected and impervious to the disciplinary process. We reject both arguments.

## Misconduct

### Count One

{¶ 5} Respondent engaged in professional misconduct first by falsely accusing several Cuyahoga County Common Pleas Court judges and the county prosecutor of corruption and bias in the execution of their official duties. Because respondent had no reasonable basis for leveling these charges, the board found her in violation of the following ethical standards: DR 1-102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (prohibiting conduct that is prejudicial to the administration of justice), 1-102(A)(6) (prohibiting conduct that adversely reflects on the lawyer's fitness to practice law), 7-102(A)(1) (prohibiting a lawyer from taking action on behalf of a client that the lawyer knows or should know would serve merely to harass or maliciously injure another), 7-106(C)(1) (prohibiting a lawyer appearing in a professional capacity before a tribunal from making an assertion that the lawyer "has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence"), and 8-102(B) (prohibiting a lawyer from

knowingly making false accusations against a judge) and Gov.Bar R. IV(2). We accept these findings of misconduct.

{¶ 6} In 2003, respondent filed race-discrimination and related claims against the Cuyahoga County Board of Commissioners, among other defendants, on behalf of Jennifer Simmons-Means and Norman Rice as employees of the Cuyahoga County Department of Justice Affairs (the *"Simmons-Means"* and *"Rice"* cases). The *Simmons-Means* case was assigned to Judge Timothy McCormick; Judge William J. Coyne presided in the *Rice* case.

{¶ 7} In November 2004, Judge Coyne granted summary judgment against Rice, and approximately one year later, the Eighth District Court of Appeals affirmed. In December 2004, defendants in the *Simmons-Means* case moved for summary judgment, and in October 2005, Judge McCormick granted that motion. Approximately one year later, Judge McCormick's decision was also affirmed.

{¶ 8} Respondent did not initially file a response to the motions for summary judgment in the *Simmons-Means* case. On January 12, 2005, she instead filed an affidavit of disqualification with this court, seeking to remove Judge McCormick, who had by that time presided in the case for nearly two years. Relator aptly characterized the affidavit as follows: "[A] rambling narration that is for the most part, entirely irrelevant to Judge McCormick or *Simmons-Means.* Respondent used the affidavit solely as a platform to broadcast her false allegations against * * * judges and public officials."

{¶ 9} Respondent claimed to be "competent to testify to the facts" and to have "first hand knowledge of the facts alleged" in the affidavit of disqualification. From respondent's testimony at the panel hearing, however, it is clear that she had nothing beyond conjecture, rumor, and innuendo to support her charges. Respondent's affidavit alleged the following:

{¶ 10} 1. The Cuyahoga County prosecutor had information that government employees were engaging in race discrimination and illegal conduct, including crimes of forgery, fraud, and falsification of public documents, yet failed to investigate.

{¶ 11} 2. Judge McCormick denied Simmons-Means due process with his "outright blatant special treatment for the defendants."

{¶ 12} 3. Judge Coyne, in the *Rice* case, had an "an ex parte communication with defense counsel regarding a discovery dispute" and then dismissed the action for political reasons and refused to reduce his reasoning to writing. (At the panel hearing, defense counsel in the *Rice* case specifically denied any ex parte communication, and respondent conceded that she had never requested findings of fact and conclusions of law from the judge.)

{¶ 13} 4. Judge McCormick showed bias for the defense in the *Simmons-Means* case by granting a six-month stay of proceedings. Respondent claimed that "political connections" motivated the judge and that his ruling "conveniently slowed down the case so that nothing could be decided until after the November election." (Evidence presented at the hearing, however, established that Judge McCormick had granted the stay to allow one defendant to care for her terminally ill spouse.)

{¶ 14} 5. Judge McCormick was "biased and intend[ed] to rule against" Simmons-Means "regardless of what evidence [she] can provide to support her case." (Evidence presented at hearing substantiated that respondent leveled this charge because Judge McCormick had asked her to try to obtain the discovery she needed from county commissioners first through written requests and then decide whether she still needed to conduct depositions of the commissioners.)

{¶ 15} 6. In an unrelated race-discrimination case, Judge Mary Jane Boyle delayed in ruling on respondent's motion for attorney fees because she was "afraid" that her ruling would cost a certain "politically connected person"

thousands of dollars. (Though respondent purportedly received this information from a court employee, she presented no witness or other evidence at the panel hearing to corroborate her claim.)

{¶ 16} "A judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5. Respondent failed to carry this burden, and on January 28, 2005, her request for Judge McCormick's disqualification was denied.

{¶ 17} Based on the foregoing, we find the requisite clear and convincing proof that respondent had no justification for accusing Judges McCormick, Coyne, and Boyle and the county prosecutor of bias and corruption.

*Count Two*

{¶ 18} Respondent also engaged in professional misconduct by repeatedly leveling unfounded accusations of racial bias and other impropriety against a federal district court judge. Because respondent had no reasonable basis for these charges, the board found that she had breached numerous ethical standards: DR 1-102(A)(4), 1-102(A)(5), 1-102(A)(6), 7-102(A)(1), 7-106(C)(1), and 8-102(B) and Gov.Bar R. IV(2). We accept these findings of misconduct.

{¶ 19} Respondent leveled her accusations against the federal judge after he granted summary judgment against her clients (14 African-Americans) in a race-discrimination case against administrators and supervisors employed by the Cuyahoga County Juvenile Court. She had filed the discrimination case in the United States District Court for the Northern District of Ohio, and in early 2003, the case came before Judge John R. Adams. In January 2005, after granting summary judgment against 11 plaintiffs, Judge Adams held a status conference and encouraged the parties to discuss settlement, but no settlement could be

reached. In March 2005, Judge Adams granted summary judgment against the remaining plaintiffs.

{¶ 20} Respondent then filed a series of grievances against Judge Adams in 2005 with the chief judge of the United States Court of Appeals for the Sixth Circuit, all of which were dismissed for lack of merit. In the first two, she asserted that Judge Adams's adverse rulings and remarks during the status conference showed racial bias and favoritism. In the third grievance, she claimed that the judge had obtained nomination to his judicial seat through improper financial contributions to prominent politicians. Testifying before the hearing panel, Judge Adams firmly denied any prejudice or other impropriety. He also noted that all of his rulings on the motions for summary judgment had been affirmed on appeal.

{¶ 21} Respondent also filed a motion to disqualify and an affidavit of prejudice in 2005, asking Judge Adams to step down. Her motion again leveled unfounded charges that the judge had made racist remarks. Judge Adams declined to recuse himself, insisting that "[t]he Court did not and would not make such statements."

{¶ 22} After the denial of her motion to disqualify, respondent sought a writ of mandamus in the Sixth Circuit, seeking an order of removal. In July 2005, the court of appeals denied the motion.

{¶ 23} In 2006, respondent moved to vacate the order denying the motion to disqualify. In support, she falsely claimed that Judge Adams knew he was under investigation by the FBI for racist conduct and criminal activity and that an agent had "sworn out a complaint" against him based on her charges. Before the hearing panel, the agent who had allegedly filed the complaint refuted respondent's claim, explaining that he had merely received and forwarded the respondent's accusations for investigative review. Another agent later determined that the information did not warrant any investigation.

{¶ 24} Respondent never succeeded in obtaining Judge Adams's removal. Based on the foregoing, we find the requisite clear and convincing proof showing that respondent had no justification for accusing Judge Adams of racial bias or other impropriety.

*Count Three*

{¶ 25} Respondent also engaged in professional misconduct by filing a baseless defamation suit against two lawyers who were her opposing counsel in a sexual-harassment action. Because respondent had no reasonable basis for the suit, the board found her in violation of DR 1-102(A)(4), 1-102(A)(5), 1-102(A)(6), 7-102(A)(1), 7-102(A)(2) (prohibiting a lawyer from knowingly advancing a claim or defense that is unwarranted under existing law, with an exception not relevant here), and 7-106(C)(1). We accept these findings of misconduct.

{¶ 26} Respondent filed the sexual-harassment case in August 2004 against her client's employer and five of its employees in the Lake County Common Pleas Court. The common pleas court granted the employer's motion for a protective order, forbidding the parties or their counsel to comment publicly.

{¶ 27} In mid-August 2005, respondent sent a threatening e-mail to two defense counsel in the case, accusing them of commenting unfavorably about her client in public. She warned that a witness had overheard one or both of them talking about the case and that their statements possibly violated the protective order. When the two lawyers replied that they did not know what respondent was talking about, she sent a second threatening e-mail.

{¶ 28} By the end of August, respondent had filed a defamation suit in the Lake County Common Pleas Court against the two attorneys, claiming that they had made "numerous slanderous remarks about plaintiff including, but not limited to, 'plaintiff was crazy,' 'plaintiff was out of her head,' 'plaintiff was a liar.' " Upon learning of the lawsuit, the witness who had allegedly overheard these

remarks called respondent and insisted that she dismiss the case immediately. He told her that she had completely misconstrued what were merely casual comments regarding rumors he had heard about how the defense intended to discredit her client. Respondent did not dismiss the case.

{¶ 29} The witness appeared in November 2005 pursuant to subpoena at a hearing in the underlying sexual-harassment case. He testified that he did not know the defense attorneys, that he had not overheard either of them talking about the case, and that he had never told respondent that he had. The witness said he had for these reasons strongly urged respondent not to pursue the defamation action, but she had refused to listen.

{¶ 30} After this hearing, respondent finally did dismiss the defamation action. The defendants moved for sanctions, and the common pleas court agreed that respondent's suit was frivolous. The court ordered respondent to pay the two defendants $500 each and to pay their counsel $3,000. The imposition of these sanctions was upheld on appeal.

{¶ 31} Based on the foregoing, we find the requisite clear and convincing proof that respondent's defamation action against opposing counsel was completely frivolous.

**Sanction**

*Respondent's False Statements Are Subject to Disciplinary Sanction*

{¶ 32} Respondent offers no legal precedent to support her argument that her statements about the judges and county prosecutor are constitutionally protected speech. As relator observes, however, *Disciplinary Counsel v. Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, settled the question. We summarized *Gardner* in *Shimko v. Lobe*, 103 Ohio St.3d 59, 2004-Ohio-4202, 813 N.E.2d 669, ¶ 58:

{¶ 33} "In *Disciplinary Counsel v. Gardner*, * * * this court held that the Free Speech Clause of the Ohio Constitution, Section II [11], Article I, although

8

broader than the federal Constitution in protecting certain false statements, does not forbid the imposition of discipline on an attorney for violating DR 8-102(B) by falsely accusing an appellate panel of judicial impropriety during a pending court proceeding. In that case, the court adopted an objective standard to determine whether a lawyer's statement about a judicial officer was made with knowledge or reckless disregard of its falsity, rather than the subjective 'actual malice' standard applicable in defamation cases under *New York Times v. Sullivan* (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686. In so doing, we explained that DR 8-102(B) is designed 'to preserve public confidence in the fairness and impartiality of our system of justice' and specifically concluded that '*the state's compelling interest in preserving public confidence in the judiciary* supports applying a standard in disciplinary proceedings different from that applicable in defamation cases.' (Emphasis added.) Id., 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, at ¶ 29 and 31."

**{¶ 34}** The standard adopted in *Gardner* evaluates an attorney's statements in terms of " '"what the reasonable attorney, considered in light of all his professional functions, would do in the same or similar circumstances" * * * [and] focuses on whether the attorney had a reasonable factual basis for making the statements, considering their nature and the context in which they were made.' " *Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, at ¶ 26, quoting *Standing Committee on Discipline v. Yagman* (C.A.9, 1995), 55 F.3d 1430, 1437, quoting *United States Dist. Court, E. Dist. of Wash. v. Sandlin* (C.A.9, 1993), 12 F.3d 861, 867. Under this standard, attorneys may still "freely exercise free speech rights and make statements supported by a reasonable factual basis, even if the attorney turns out to be mistaken." Id. at ¶ 31. But plainly, *Gardner* stands for the proposition that when an attorney levels accusations of judicial impropriety that a reasonable attorney would consider to be untrue, disciplinary sanctions are permissible.

{¶ 35} Respondent's accusations were baseless. Given the complete lack of substantiation, no reasonable attorney would accept her charges of bias and corruption as true. The imposition of disciplinary measures in this case, therefore, poses no constitutional implications.

*An Indefinite Suspension Is Appropriate*

{¶ 36} In recommending the indefinite suspension of respondent's license to practice, the board weighed the mitigating and aggravating factors listed in BCGD Proc.Reg. 10(B). The board found only the single mitigating factor on which respondent urges us to rely – lack of a prior record of professional discipline. See BCGD Proc.Reg. 10(B)(2)(a). Respondent's record, however, does little to offset the aggravating factors that are also present.

{¶ 37} As the board found, respondent committed acts of dishonesty, engaged in a pattern of misconduct, committed multiple offenses, and has failed to acknowledge the wrongfulness of her conduct. BCGD Proc.Reg. 10(B)(1)(b), (c), (d), and (g). Her attacks on the public officials caused considerable harm. BCGD Proc.Reg. 10(B)(1)(h). False statements impugning the integrity of members of the judiciary and judicial system erode public confidence. *Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, at ¶ 30.

{¶ 38} Also factoring into our decision is respondent's failure to inquire into the truth of alleged racial discrimination and other claims and the cost to her clients. After an unsuccessful appeal of decisions granting summary judgment, Judge Adams assessed attorney fees and costs against respondent and her clients, jointly and severally, a decision that the Sixth Circuit affirmed but remanded for a new calculation of the amounts owed by each on an individual basis. See *Garner v. Cuyahoga Cty. Juvenile Court* (2009), 554 F.3d 624.

{¶ 39} Moreover, respondent seems unable to understand fundamental evidentiary and procedural rules, a problem manifested by her disjointed efforts to present her case before the hearing panel. When questioned about the firsthand

knowledge she claimed to have of the improprieties she had alleged, respondent referred to having learned the information from "someone else" or by "looking at documents," thereby erroneously implying that unreliable hearsay may serve as competent proof. She argued in closing, "If there is any question as to whether respondent had a basis for her allegations, you only have to look at the newspapers." Respondent has further maintained that in requiring her to set forth the basis for her claims, the statutory provisions or court rules for obtaining a judge's disqualification or recusal required her to level the charges that she did.

{¶ 40} In *Gardner*, the lawyer attacked court of appeals judges in a request for reconsideration, objecting to a decision affirming his client's criminal conviction. He accused the panel of having a prosecutorial bias, distorting the truth, being result-driven, and ignoring well-established law. Even at the disciplinary hearing, the lawyer confirmed his continued belief that the judges had "skewed and ignored the facts, disregarded honesty and truth, and violated their oaths to decide cases fairly and impartially." Id., 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, ¶ 11. Because such unfounded attacks on the judiciary warranted an actual suspension from practice, we suspended the lawyer's license for six months.

{¶ 41} But Gardner leveled his attacks in a single case. He did not, as respondent has, keep resorting to such improprieties in case after case as a defense to irrational suspicions of corruption and discrimination in government. We have seen such misconduct before and have dealt with it severely. For making numerous false accusations of criminal and unethical activity against public officials and private citizens, compromising her clients' interests, and manipulating the legal system to harass and intimidate, we permanently disbarred the attorney in *Disciplinary Counsel v. Baumgartner*, 100 Ohio St.3d 41, 2003-Ohio-4756, 796 N.E.2d 495.

{¶ 42} Baumgartner made accusations against anyone she perceived as a detractor. Respondent's accusations were not as pervasive as Baumgartner's, but they were also not as restricted as Gardner's one-time expression of frustration, and Gardner later apologized and acknowledged that his accusations had been unprofessional. The intermediate sanction of indefinite suspension is therefore appropriate.

{¶ 43} Respondent is indefinitely suspended from the practice of law in Ohio and, pursuant to Gov.Bar R. V(10)(B), may not petition for reinstatement until at least two years from the date of our order. Moreover, because of our concerns that respondent's misconduct may be a by-product of unaddressed mental-health issues, we impose a condition of reinstatement in addition to the requirements of Gov.Bar R. V(10)(B) through (E): any petition for reinstatement that respondent files must also include proof that to a reasonable degree of medical certainty, she is mentally fit to return to the competent, professional, and ethical practice of law.

{¶ 44} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Lori J. Brown, First Assistant Disciplinary Counsel, for relator.

J.K. Roberts Law Group, Ltd., Jacqueline Roberts, and Lawrence J. Kramer, for respondent.

_____