French, J.
{¶ 1} Respondent, Christopher Thomas Cicero of Columbus, Ohio, Attorney Registration No. 0039882, was admitted to the practice of law in Ohio in 1988. Relator, disciplinary counsel, has charged Cicero with making a false statement of *7 law or fact to a tribunal, in violation of Prof.Cond.R. 3.3(a); engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of Prof. Cond.R. 8.4(c); engaging in conduct prejudicial to the administration of justice, in violation of Prof.Cond.R. 8.4(d); and engaging in conduct that adversely reflects on Cicero’s fitness to practice law, in violation of Prof.Cond.R. 8.4(h).
{¶ 2} This is Cicero’s third time before the court on disciplinary charges. In 1997, we suspended Cicero from the practice of law for one year for engaging in conduct prejudicial to the administration of justice and failing to maintain a respectful attitude toward the courts, based on his insinuation to other attorneys, including his opposing counsel, that he was having a sexual relationship with a judge before whom he was practicing. Disciplinary Counsel v. Cicero, 78 Ohio St.3d 351, 678 N.E.2d 517 (1997). In 2012, we again suspended Cicero for one year for violations of Prof.Cond.R. 1.18 (prohibiting a lawyer from revealing information learned during discussions with a prospective client) and 8.4(h), based on his disclosure of a potential client’s confidential communications. Disciplinary Counsel v. Cicero, 134 Ohio St.3d 311, 2012-Ohio-5457, 982 N.E.2d 650.
{¶ 3} Relator’s single-count complaint here alleged that Cicero, after receiving a speeding ticket, obtained a blank, signed judgment entry from the arraignment-court judge, used the entry to unilaterally reduce his speeding charge to a headlight violation, and later falsely represented to the court and the prosecutor’s office that a prosecutor had approved the reduction. This alleged conduct occurred while Cicero’s second disciplinary case was pending.
{¶ 4} A panel of the Board of Commissioners on Grievances and Discipline heard testimony, reviewed the evidence, and made findings of fact and conclusions of law. The panel found that Cicero had violated Prof.Cond.R. 3.3(a), 8.4(c), 8.4(d), and 8.4(h) and recommended an indefinite suspension of Cicero’s license to practice law. Upon review, the board amended the panel’s findings to add a specific finding that Cicero’s conduct was sufficiently egregious to constitute a violation of Prof.Cond.R. 8.4(h). The board also modified the panel’s recommendation and recommended permanent disbarment instead of an indefinite suspension.
{¶ 5} Cicero has filed an objection, challenging only the board’s recommendation of permanent disbarment. For purposes of his objection, Cicero accepts the panel’s findings of fact and conclusions of law, as modified by the board. For the following reasons, we sustain Cicero’s objection.
Misconduct
{¶ 6} This case centers around Cicero’s conduct in the Franklin County Municipal Court after receiving a speeding ticket in Columbus. Having handled a large number of traffic cases and having appeared in the municipal court on *8 numerous occasions, Cicero was familiar with the judges, prosecutors, and policies of that court.
{¶ 7} On March 22, 2012, the day after receiving his speeding ticket, Cicero approached the municipal-court arraignment judge, Scott VanDerKarr. Cicero informed Judge VanDerKarr of his speeding ticket and obtained a blank, but signed, judgment entry. There is conflicting testimony as to what Cicero told Judge VanDerKarr. According to the judge, Cicero indicated that a prosecutor, who he identified by name, had offered him a reduction of his charge. But Cicero claims that he told the judge only that he was going to talk to an unnamed prosecutor. At the time, Cicero’s speeding ticket had neither been filed with the court nor assigned a case number, and no prosecutor had offered to amend or reduce Cicero’s speeding ticket. Cicero did not consult the arraignment-court prosecutor, Rob Levering, because he wanted to seek out a more “favorable” prosecutor.
{¶ 8} Following Cicero’s instructions, his assistant, Tyler Carrell, filled in the blank judgment entry and filed it on April 3, 2012. The entry amended Cicero’s speeding violation to a headlight violation under R.C. 4513.04, an offense that carries no “points” and eliminated any danger of a license suspension. (Cicero had previously received approximately 50 speeding tickets, and his driver’s license had twice been suspended as a result.) The amendment of a speeding infraction to an equipment violation was contrary to the city attorney’s policy that all amendments relate to the original offense.
{¶ 9} Finding the April 3, 2012 judgment entry to be incomplete, as it did not include a finding of guilt, the clerk’s office contacted Judge VanDerKarr’s bailiff, Mike Basham. In an effort to correct the judgment entry, both Basham and Judge VanDerKarr contacted Cicero regarding the identity of the prosecutor who agreed to amend his citation, but Cicero refused to name a prosecutor. After his fruitless conversation with Cicero, Judge VanDerKarr issued a warrant for Cicero’s arrest for contempt of court.
{¶ 10} Following his conversation with Judge VanDerKarr, Cicero drafted a letter to Lara N. Baker, the city attorney’s chief prosecutor. Cicero’s letter described the sequence of events as follows:
I talked to one of your assistants] and showed that person my ticket and asked whether or not I could amend it. * * *
I then went to the [arraignment court] judge at the time which was Judge [VanDerKarr]. I informed him I had a speeding ticket that your office was willing to amend[.] * * *
Hi * *
*9 [T]hat agreement made by your office was the only reason why * * * Judge VanDerKarr agreed to the amendment.
Cicero admits that he intentionally lied regarding the sequence of events described in his letter and that he did not have approval from a prosecutor when he approached Judge VanDerKarr.
{¶ 11} On April 5, 2012, Cicero appeared before Judge VanDerKarr on the arrest warrant, but refused to answer Judge VanDerKarr’s direct requests for the name of the prosecutor who had offered to amend his speeding citation. Baker, who was also present, stated that she had spoken with all but three of her staff and that each staff member denied offering Cicero an amendment. One of the staff members Baker had not reached was former assistant prosecutor Brandon Shroy, whose last day of work at the city attorney’s office was March 23, 2012. Upon Cicero’s request for 24 hours to “talk to somebody,” Judge VanDer-Karr recessed the contempt hearing and allowed Cicero to post a $1,000 cash bond for his release. Judge VanDerKarr warned Cicero, “Tomorrow, if you don’t give me a name, cash bond will be forfeited and you’ll go to jail.”
{¶ 12} Following the recess, Cicero approached Basham and identified Shroy as the prosecutor who made the offer. Cicero also called Shroy. According to Shroy, Cicero asked if he could use Shroy’s name in connection with a ticket he had received, and Shroy told him no. Cicero, on the other hand, testified that he told Shroy that there was a problem with the amendment Shroy had given him and asked Shroy if he remembered the offer. Cicero testified that after leaving the arraignment courtroom on March 22, 2012, he had a 20-second conversation with Shroy and that Shroy authorized Cicero to amend his speeding ticket. Shroy denied that any such conversation had occurred.
{¶ 13} On April 6, 2012, before the contempt hearing resumed, Cicero spoke with Basham, who relayed to Judge VanDerKarr that Cicero had admitted that he did not have an offer when he approached Judge VanDerKarr in arraignment court. In court, Cicero denied making that statement and named Shroy as the prosecutor who authorized the reduction. But he again refused to explain how the alleged plea offer came about. Judge VanDerKarr again continued the contempt hearing, revoked Cicero’s bond, and remanded Cicero into custody. Cicero spent five days in jail.
{¶ 14} On April 10, 2012, Cicero appeared before Judge VanDerKarr with counsel, withdrew his plea to the headlight violation, and pleaded no contest to the original speeding violation. Cicero’s attorney stated that Cicero recognized the delay caused by his failure to answer Judge VanDerKarr’s questions and claimed that there had been a “fundamental misunderstanding” among Cicero, the prosecutor’s office, and the court. Counsel relayed Cicero’s “sincere!] *10 apologfy] for the inconvenience.” Judge VanDerKarr cited Cicero for contempt and sentenced him to time served.
{¶ 15} Cicero does not challenge the board’s findings that his conduct violated Prof.Cond.R. 3.3(a), 8.4(c), 8.4(d), and 8.4(h).
Sanction
{¶ 16} When imposing sanctions for attorney misconduct, we consider the duties violated, the actual injury caused, the attorney’s mental state, and sanctions imposed in similar cases. Stark Cty. Bar Assn. v. Buttacavoli, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. We also weigh the evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings before the Board of Commissioners on Grievances and Discipline (“BCGD Proe.Reg.”). Cleveland Bar Assn. v. Glatki, 88 Ohio St.3d 381, 384, 726 N.E.2d 993 (2000).
{¶ 17} The panel noted the character testimony that Cicero offered in mitigation, but ultimately found a lack of mitigating factors. On the other hand, the panel found several aggravating factors. In addition to Cicero’s prior disciplinary record, the panel found that Cicero had acted with a dishonest or selfish motive to avoid a suspension of his driver’s license and, later, to protect his professional reputation. BCGD Proe.Reg. 10(B)(1)(a) and (b). The panel found that Cicero engaged in a pattern of misconduct, considering both the conduct in this case and in his previous disciplinary cases. BCGD Proe.Reg. 10(B)(1)(c). The panel also found that Cicero had repeatedly refused to accept responsibility for his actions and relay the truth. BCGD Proe.Reg. 10(B)(1)(g). The panel concluded that Cicero’s conduct demonstrated disrespect for the judicial system and warranted an indefinite suspension.
{¶ 18} In recommending permanent disbarment rather than the panel’s recommended indefinite suspension, the board cited the following factors:
(1) [Cicero’s] repeated disciplinary violations; (2) the pattern of dishonesty and self-serving behavior that is prevalent throughout [Cicero’s] disciplinary cases; (3) engaging in the misconduct that is the subject of this proceeding while his most recent disciplinary case was pending; (4) the Board’s conclusion that [Cicero] is no longer fit to practice a profession grounded on trust, integrity, and candor; and (5) the Board’s conclusion that disbarment is necessary to ensure the protection of the public.
{¶ 19} In cases involving multiple instances of misconduct, including a violation of Prof.Cond.R. 8.4(c), we impose an actual suspension. Disciplinary Counsel v. Stafford, 131 Ohio St.3d 385, 2012-Ohio-909, 965 N.E.2d 971, ¶ 67. Actual *11 suspension is also warranted when an attorney exhibits a pattern of abusing legal procedures. Id. at ¶ 70. A lawyer’s material misrepresentation to a court “ ‘strikes at the very core of [the] lawyer’s relationship with the court and with the client. Respect for our profession is diminished with every deceitful act of a lawyer.’ ” Id. at ¶ 68, quoting Disciplinary Counsel v. Fowerbaugh, 74 Ohio St.3d 187, 190, 658 N.E.2d 237 (1995).
{¶ 20} Cicero does not address the possibility of an actual suspension. Instead, he urges this court to adopt the panel’s recommendation of indefinite suspension in lieu of permanent disbarment. “[W]e reserve the ultimate sanction of permanent disbarment for the most egregious misconduct.” Disciplinary Counsel v. Hoskins, 119 Ohio St.3d 17, 2008-Ohio-3194, 891 N.E.2d 324, ¶ 92. We have permanently disbarred attorneys upon proof of the attorney’s “proclivity for lying and deceit.” Cincinnati Bar Assn. v. Farrell, 129 Ohio St.3d 223, 2011-Ohio-2879, 951 N.E.2d 390, ¶ 34. But the ultimate sanction is not automatic in such cases. In Stafford, which involved “a course of conduct that was replete with dishonest, deceptive, and disrespectful acts,” including false statements concerning the integrity of a judicial officer, we imposed only a 12-month suspension. Id. at ¶ 68-69, 80. We have also imposed partially or fully stayed suspensions in some cases involving dishonest, deceitful, or fraudulent conduct. Id. at ¶ 71. Cicero suggests that the misconduct in this case does not rise to the level of egregiousness required for permanent disbarment, and he stresses that his prior infractions did not involve matters affecting client relationships.
{¶ 21} In support of its recommendation of indefinite suspension, the panel cited Disciplinary Counsel v. Frost, 122 Ohio St.3d 219, 2009-Ohio-2870, 909 N.E.2d 1271, and Columbus Bar Assn. v. Squeo, 133 Ohio St.3d 536, 2012-Ohio-5004, 979 N.E.2d 321. The attorney in Frost filed false and baseless accusations of bias and corruption against county judges and a county prosecutor, leveled unfounded accusations of racial bias and other impropriety against a federal judge, and filed a baseless defamation action against her opposing counsel. This court agreed with the board that the attorney “committed acts of dishonesty, engaged in a pattern of misconduct, committed multiple offenses, and * * * failed to acknowledge the wrongfulness of her conduct.” Frost at ¶ 37. While noting the eroding effect on public confidence of false statements impugning the integrity of judicial officers, the attorney’s failure to inquire into the truth of her allegations, and the attorney’s ingrained pattern of resorting to improprieties, we imposed only an indefinite suspension. Id. at ¶ 37-38, 41-42. We also indefinitely suspended the attorney in Squeo, who held himself out as an attorney while his license was suspended and did not cooperate in a disciplinary investigation. Aggravating factors included prior discipline, a selfish or dishonest motive, a pattern of misconduct, multiple offenses, failure to cooperate in the disciplinary *12 process, vulnerability of and resulting harm to victims of the misconduct, and failure to make restitution. Id. at ¶ 18.
{¶ 22} In support of its recommendation of permanent disbarment here, the board cites Farrell, 129 Ohio St.3d 223, 2011-Ohio-2879, 951 N.E.2d 390. There, the Cincinnati Bar Association filed a complaint against an attorney who was already serving a two-year suspension for fabricating documents, forging his wife’s signature on a power of attorney, lying to secure notarization of the power of attorney, and using the forged document to obtain credit. The bar association’s complaint alleged that the attorney had failed to file tax returns, failed to pay tax liabilities, and filed a false affidavit in his domestic-relations proceedings. The attorney admitted the allegations and acknowledged violations of Prof. Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer’s honesty or trustworthiness), (c), (d), and (h), but he objected to the board’s recommendation for permanent disbarment. In overruling the objection, we found a lack of genuine remorse and stated that the attorney’s “pattern of lying and deceit strongly suggests that he lacks the ability to conform his behavior to the ethical standards incumbent upon attorneys in this state.” Id. at ¶ 35.
{¶ 23} The conduct alleged in Farrell overlapped and was intrinsically connected with the conduct underlying the attorney’s prior disciplinary action. Both cases stemmed from the attorney’s financial dishonesty in relation to his deteriorating relationship with his wife. The attorney’s misconduct began in 2002, when he stopped filing income-tax returns and ceased making regular estimated payments toward his income-tax liability. Id. at ¶ 7. Two years later, the attorney again undertook a “pattern of deception” that included the dishonest and fraudulent conduct underlying his first disciplinary case. Id. The panel found that the attorney “had engaged in a six-year pattern of pathological lying and deceptive conduct, acted with a premeditated intent to deceive the domestic-relations court, and submitted false testimony to another panel of the [bjoard.” Id. at ¶ 22. Moreover, the attorney “continued to spin his web of lies” even while expressing remorse in his prior case. Id. at ¶ 33.
{¶ 24} This case is more akin to Frost and Squeo than to Farrell. Like the attorneys in Frost and Squeo, Cicero has engaged in a pattern of dishonest conduct with selfish or dishonest motives, and, like those attorneys, he should face indefinite suspension. Unlike the continued deception linking the disciplinary violations committed by the attorney in Farrell, however, Cicero’s disciplinary history involves three distinct matters. Cicero’s prior disciplinary violations were not based on findings of dishonesty, misrepresentation, or fraud. Although a witness in Cicero’s first disciplinary action testified that contrary to Cicero’s testimony, Cicero’s relationship with the judge had begun before the judge *13 recused herself, the board concluded that disciplinary counsel failed to raise that issue in the complaint. 78 Ohio St.3d at 352, 678 N.E.2d 517. Although the panel in Cicero’s second disciplinary case found his testimony “ ‘at times disingenuous and not credible,’ ” Cicero’s violations there were not based on dishonest conduct, but on the revelation of confidential information from a prospective client. 134 Ohio St.3d 311, 2012-Ohio-5457, 982 N.E.2d 650, at ¶ 14, quoting the panel’s report. The longstanding pattern of deceit present in Farrell is not present in this case.
{¶ 25} To be sure, Cicero’s repeated disciplinary violations are troubling. But the mere fact that this is Cicero’s third disciplinary sanction does not necessarily mean that his misconduct merits permanent disbarment. In Columbus Bar Assn. v. Boggs, 129 Ohio St.3d 190, 2011-Ohio-2637, 951 N.E.2d 65, for example, this court ordered an indefinite suspension in an attorney’s third disciplinary case, even though both his second and third involved the attorney’s failure to keep accurate records of client money in his trust account and even though we found that the attorney had failed to rectify that unprofessional conduct after his second disciplinary sanction.
{¶26} By no means do we condone Cicero’s dishonest, unprofessional, and censurable conduct, which was prejudicial to the administration of justice and which adversely reflects on Cicero’s fitness to practice law. Nevertheless, in light of this court’s precedent and considering all of the circumstances, including the aggravating factors and lack of significant mitigating factors, we do not find that Cicero’s conduct, egregious though it may be, rises to the level for which we reserve the sanction of permanent disbarment. Instead, we determine that indefinite suspension is appropriate for Cicero’s misconduct.
Conclusion
{¶ 27} For these reasons, we indefinitely suspend Christopher Thomas Cicero from the practice of law in Ohio. Costs are taxed to Cicero.
Judgment accordingly.
Pfeifer, O’Donnell, Kennedy, and O’Neill, JJ., concur.
O’Connor, C.J., and Lanzinger, J., dissent.