DISCIPLINARY COUNSEL *v*. PULLINS.

[Cite as *Disciplinary Counsel v. Pullins*, **127 Ohio St.3d 436, 2010-Ohio-6241.**]

*Attorneys — Misconduct — Multiple violations of the Code of Professional Responsibility and the Rules of Professional Conduct — Indefinite suspension.*

(No. 2010-0851 — Submitted September 14, 2010 — Decided December 23, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 09-022.

_____

**Per Curiam**.

**{¶ 1}** Respondent, Scott Allan Pullins of Columbus, Ohio, Attorney Registration No. 0076809, was admitted to the practice of law in Ohio in 2003.

**{¶ 2}** In a seven-count amended complaint accepted for filing on March 27, 2009, relator, Disciplinary Counsel, charged respondent with numerous counts of professional misconduct arising from his filing of false and disrespectful statements regarding two judges in affidavits of disqualification, improper use of his notary powers, issuance of subpoenas in a stayed case, accusations that two judges and a prosecutor engaged in ex parte communications about pending cases, and issuance of a subpoena to a judge's wife. A panel of the Board of Commissioners on Grievances and Discipline made findings of fact and misconduct and recommended that this court indefinitely suspend respondent's license to practice law in Ohio. The board adopted the panel's findings and recommended sanction.

**{¶ 3}** Respondent has made numerous objections to the board's report.[1] For the reasons that follow, however, we overrule those objections, accept the board's findings of fact and misconduct, and indefinitely suspend respondent from the practice of law in Ohio.

## Misconduct

### *Count One*

**{¶ 4}** In January 2006, respondent commenced an action seeking ex parte and permanent civil stalking protection orders on behalf of himself, his wife, his daughter, and his wife's parents in the Knox County Court of Common Pleas. The case was assigned to Judge Otho Eyster. In accordance with Rule 22 of the Knox County Common Pleas Court Rules of Practice and Procedure,[2] the court conducted a hearing upon the affidavit submitted by respondent and denied the petition for an ex parte order.

**{¶ 5}** Before the full hearing on respondent's petition for the protection order, respondent filed grievances against the judge with the Office of Disciplinary Counsel, followed by an affidavit of disqualification in this court. In his affidavit of disqualification, respondent averred that "the judge has violated Canons 1, 2, and 3 of the Ohio Judicial Code of Conduct." He noted that R.C. 2903.214(D)(1) provides that a court "shall hold an ex parte hearing as soon as possible" after the petition for an ex parte civil order has been filed and stated that "*Judge Eyster apparently disagrees with this law*." (Emphasis sic.) Respondent further stated that "Judge Eyster simply ignored Petitioner's motion for an ex parte hearing" and that he "summarily denied the petition for an ex parte order and refused to grant an ex parte hearing." Respondent also averred that

---

1. On December 3, 2010, respondent moved this court for leave to clarify the record, based upon certain alleged misstatements of fact that relator made at oral argument. Because the documentary evidence in the record speaks for itself, we hereby deny respondent's motion.

2. Rule 22 of the Knox County Common Pleas Court Rules of Practice and Procedure provides, "[H]earings on *ex parte* orders may be conducted upon affidavit only."

"Petitioner has spoken with other local attorneys who have informed him that Judge Eyster routinely refuses to hold ex parte hearings and rarely grants permanent protection orders" and that he "has brought three separate formal complaints against Judge Eyster with the Office of Disciplinary Counsel regarding Judge Eyster's refusal to follow Ohio law and Ohio civil rules concerning the above matters."

{¶ 6} Chief Justice Moyer denied respondent's affidavit of disqualification on March 16, 2006. *In re Disqualification of Eyster* (Mar. 16, 2006), case No. 06-AP-017. Thereafter, respondent voluntarily dismissed his petition for a civil stalking protection order.

{¶ 7} The board observed that at the time respondent filed his affidavit to disqualify the judge, the grievances against the judge were confidential because the judge had not waived his right to confidentiality and no formal complaint had been certified to the board. Respondent has admitted that he was aware that all documents and proceedings relating to the grievances filed by him were confidential and that in *In re Disqualification of Krueger* (1995), 74 Ohio St.3d 1267, 1268, 657 N.E.2d 1365, this court cautioned attorneys that "disciplinary complaints remain private until and unless formal proceedings begin before the Board of Commissioners on Grievances and Discipline." Therefore, the board determined that respondent knew that he should not have revealed the fact that he had filed grievances against the judge, but did so based upon his belief that the affidavit of disqualification was, to some extent, private.

{¶ 8} Based upon these factual findings, the board concluded that respondent's conduct violated DR 1-102(A)(5) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), 1-102(A)(6) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law), 7-106(C)(6) (prohibiting a lawyer from engaging in undignified or discourteous conduct that is degrading to a tribunal

3

when appearing in his professional capacity before that tribunal), and 8-102(B) (prohibiting a lawyer from knowingly making false accusations against a judge or other adjudicatory officer) and Gov.Bar R. IV(2) (requiring a lawyer to maintain a respectful attitude toward the courts, not for the sake of the temporary incumbent of the judicial office but for the maintenance of its supreme importance) and V(11)(E) (requiring that all proceedings and documents relating to review and investigation of grievances be private). The board, however, recommends that we dismiss the alleged violation of DR 1-102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) in Count One because it has not been proved by clear and convincing evidence.

{¶ 9} Respondent objects to the board's findings of misconduct, arguing that his conduct did not violate the Code of Professional Responsibility because (1) he had a reasonable factual basis for stating that the judge had violated Canons 1, 2, and 3 of the former Code of Judicial Conduct and (2) he had a reasonable factual and legal basis for revealing that he had filed grievances against the judge in the context of his affidavit of disqualification.

{¶ 10} Throughout this disciplinary proceeding, respondent has maintained that R.C. 2903.214(D)(1) requires a court to conduct an ex parte hearing, at which the petitioner seeking an ex parte protection order may personally appear and present testimony in support of his or her petition. R.C. 2903.214(D)(1) provides, "If a person who files a petition pursuant to this section requests an ex parte order, the court shall hold an ex parte hearing as soon as possible after the petition is filed, but not later than the next day that the court is in session after the petition is filed." The plain language of the statute, however, does not specify the type of hearing that the court must conduct. We have recognized that the General Assembly has used the term "hearing" in numerous instances without defining it and that "[i]n those cases, we have left the nature of the hearing to the discretion of the trial court." *Pruszynski v. Reeves*, 117 Ohio

St.3d 92, 2008-Ohio-510, 881 N.E.2d 1230, ¶ 9.  While respondent sought to challenge the court's exercise of that discretion, it is well settled that an affidavit of disqualification "is not a vehicle to contest matters of substantive or procedural law."  *In re Disqualification of Solovan*, 100 Ohio St.3d 1214, 2003-Ohio-5484, 798 N.E.2d 3, ¶ 4.

{¶ 11} We have recognized that ethical rules prohibiting false statements impugning the integrity of judges are necessary " 'to preserve public confidence in the fairness and impartiality of our system of justice.' "  *Disciplinary Counsel v. Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, ¶ 29, quoting *Standing Commt. on Discipline of the United States Dist. Court for the Cent. Dist. of California v. Yagman* (C.A.9, 1995), 55 F.3d 1430, 1437.  In furtherance of that compelling governmental interest, we adopted an objective standard to determine whether a lawyer's statement about a judicial officer was made with knowledge or reckless disregard of its falsity, instead of the subjective, actual-malice standard applied in defamation cases against a public official.  *Gardner* at ¶ 31.  See also *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686.  Therefore, we held that "an attorney may be sanctioned for making accusations of judicial impropriety that a reasonable attorney would believe are false."  *Gardner* at ¶ 31.

{¶ 12} Here, a reasonable attorney would believe that respondent's statements were false because they expressed an erroneous and unreasonable belief that the judge had disregarded the requirements of R.C. 2903.214(D)(1) by failing to conduct *any* hearing on the ex parte motion and had violated multiple Canons of the former Code of Judicial Conduct.  These unfounded and disrespectful statements neither establish that the law is what respondent claims it to be nor present a good-faith argument for an extension, modification, or reversal of existing law.  Rather, they call into question the honesty and integrity of a judge and cast the entire judiciary in a bad light.

{¶ 13} Respondent further contends that it is not a disciplinary violation for an attorney to reveal in an affidavit of disqualification that he has filed grievances against the judge he seeks to disqualify. He asserts that a number of attorneys have done so without facing disciplinary charges and that he had a good-faith reason to believe that the privacy provisions of Gov.Bar R. V(11)(E) did not apply to him, because he was not required to take the oath of confidentiality set forth in Gov.Bar R. V(11)(E)(4).

{¶ 14} The Supreme Court Rules for the Government of the Bar of Ohio necessarily apply to attorneys licensed to practice law in this state. The fact that attorneys are not required to take the oath set forth in Gov.Bar R. V(11)(E)(4) does not exempt them from the obligation to maintain the privacy of a disciplinary grievance prior to the certification of a complaint by a probable-cause panel.

{¶ 15} This interpretation of Gov.Bar R. V(11)(E) is consistent with Board of Commissioners on Grievances and Discipline Opinion No. 98-2 (Apr. 3, 1998), which states, "It is improper under the privacy provisions of Governing Bar Rule V§11(E) for an attorney to state in an affidavit of disqualification of a judge that the attorney has filed a disciplinary grievance against the judge when the grievance has not been certified as a formal complaint. * * * An attorney is not prohibited from including in an affidavit of disqualification the facts underlying a grievance." Moreover, as Chief Justice Moyer observed in *In re Disqualification of Squire*, 105 Ohio St.3d 1221, 2004-Ohio-7358, 826 N.E.2d 285, ¶ 7, "all proceedings and documents relating to those uncertified complaints are private and confidential, and I have no knowledge about those complaints or the allegations in them beyond what affiant and [the judge] have stated in their filings with this court." Thus, the disclosure that a grievance has been filed alleging the same facts as are set forth in an affidavit of disqualification provides

no additional information that will aid the Chief Justice in determining whether disqualification is appropriate.

{¶ 16} Having determined that respondent's objections to the board's findings with respect to count one are meritless, we adopt the board's findings of fact and misconduct with respect to this count.

*Count Two*

{¶ 17} In September 2005, Judge Eyster appointed respondent to serve as a guardian ad litem in a domestic-relations case. In his February 2006 guardian's report, respondent made the following statements, referring to the court's denial of the mother's petitions for an ex parte and permanent domestic-violence civil protection order against her former boyfriend:

{¶ 18} (1) "On July 13, 2005, as is his custom, Judge Otho Eyster refused to hold an Ex Parte Hearing and summarily denied the request for an Ex Parte Protection Order."

{¶ 19} (2) "Apparently Judge Eyster does not agree with this portion of Ohio law [R.C. 2903.214(D)(1)] so he routinely ignores it."

{¶ 20} (3) "In my years of practicing law and working with appointed and elected officials, this is the worst example that I have ever seen of negligence and incompetence in carrying out the duties of a public official."

{¶ 21} (4) "Unfortunately, Judge Otho Eyster and this Court have failed [the mother] significantly in her time of need."

{¶ 22} The board found that respondent's conduct in making these statements violated DR 1-102(A)(5), 1-102(A)(6) and 7-106(C)(6) and Gov.Bar R. IV(2).

{¶ 23} Respondent objects to the board's findings with respect to this count, claiming that he had a reasonable factual and legal basis for making these statements based upon the judge's failure to conduct an evidentiary hearing on the

mother's petition for an ex parte civil protection order. But as discussed in Count One, this argument is without merit.

{¶ 24} Although he admits that his statements were discourteous and disrespectful to Judge Eyster, respondent contends that they were not so undignified or discourteous as to violate DR 7-106(C)(6) or 1-102(A)(5). Respondent seeks to diminish the significance of his conduct, observing that he made the statements in his capacity as a guardian ad litem, rather than as an attorney, and that the report was not widely disseminated or made public because it was never entered into evidence in the underlying case.

{¶ 25} Being licensed as an attorney is not a prerequisite for appointment as a guardian ad litem in a domestic-relations or juvenile case, but even lay guardians ad litem are officers of the court. See Sup.R. 48(D)(3) and (E). Therefore, respondent's obligations under the former Code of Professional Responsibility and the Rules of Professional Conduct are inextricably intertwined with his appointed role as a guardian ad litem in the underlying case. Moreover, we observe that as a general rule, a guardian ad litem's report is not private. It is filed with the court, see Sup.R. 48(D)(15), and it is available for inspection by the parties and their counsel, Sup.R. 48(F)(1) and (2). The rules do provide a mechanism for restricting access to the report to preserve the privacy, confidentiality, or safety of the parties or the person that the guardian was appointed to protect. Sup.R. 48(D)(15).

{¶ 26} We have previously disciplined an attorney for making unfounded accusations of judicial impropriety against an appellate panel in a motion seeking reconsideration of that panel's decision affirming his client's criminal conviction. *Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425. In this case, respondent accused Judge Eyster of negligence, incompetence, and ignoring the law that he is charged to uphold, based upon a flawed reading of the Ohio Revised Code and an incomplete investigation of the case. Although respondent had

evidence that the mother's former boyfriend had engaged in acts of domestic violence against other persons in the past, he had no evidence that he had engaged in acts of violence toward the mother or her children. Indeed, respondent admitted that he had not read the transcript of the full hearing on the mother's petition. Our review of that transcript confirms Judge Eyster's testimony that a domestic-violence protection order was unwarranted.

{¶ 27} Because we conclude that respondent's objections are without merit, we adopt the board's findings of fact and misconduct with respect to this count.

*Count Three*

{¶ 28} In April 2006, respondent filed a complaint for temporary and permanent injunctions and declaratory judgment on behalf of his wife and his father-in-law. Contemporaneously with filing that action, respondent filed a motion for a temporary restraining order and an affidavit in support of that motion.

{¶ 29} Respondent placed his notary stamp and seal on the affidavit, which purportedly had been executed by his wife. The affidavit states, "Now comes Plaintiff Kathryn Elliott Pullins on April 3, 2006, and swears that the information contained in the previously filed complaint and the motion for a temporary restraining order filed herein is all true and accurate to the best of my knowledge and belief." Respondent later acknowledged that he had signed his wife's name to the document and claimed that he had done so pursuant to a power of attorney. He further admitted that after doing so, he placed his notary stamp and seal on the affidavit, thereby intending to notarize his own signing of his wife's name.

{¶ 30} The board found that this conduct violated DR 1-102(A)(4), 1-102(A)(6), 7-102(A)(4) (prohibiting a lawyer from knowingly using perjured

testimony or false evidence), and 7-102(A)(6) (prohibiting a lawyer from creating or preserving evidence when he knows or it is obvious that the evidence is false).

{¶ 31} Respondent objects to the board's findings of misconduct, arguing that he had a power of attorney authorizing him to sign his wife's name to the challenged affidavit. He further asserts that the affidavit was not material, because the trial court denied the request for a temporary restraining order, did not rely upon the affidavit, did not consider the affidavit to be a fraud upon the court, and did not believe that counsel committed any acts requiring disciplinary action. Therefore, respondent asks this court to find that he violated only DR 1-102(A)(6) and dismiss the remaining violations in this count.

{¶ 32} We have acknowledged that a trial court has the authority and duty to require attorneys in proceedings before it to conduct themselves ethically. *Royal Indemn. Co. v. J.C. Penney Co., Inc.* (1986), 27 Ohio St.3d 31, 34, 27 OBR 447, 501 N.E.2d 617, quoting *Hahn v. Boeing Co.* (1980), 95 Wash.2d 28, 34, 621 P.2d 1263. Section 2(B)(1)(g), Article IV of the Ohio Constitution, however, vests this court with exclusive original jurisdiction over "[a]dmission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law." Therefore, we accord no weight to respondent's argument that the trial judge's failure to sanction him or otherwise report his conduct to a disciplinary authority precludes this court from considering these alleged ethical violations.

{¶ 33} We have previously found a violation of DR 1-102(A)(4) when an attorney signed a client's name to an affidavit without indicating that the signature was made with telephone authorization and then notarized her rendition of the client's signature. *Cincinnati Bar Assn. v. Thomas* (2001), 93 Ohio St.3d 402, 403, 754 N.E.2d 1263. See also *Disciplinary Counsel v. Mezacapa*, 101 Ohio St.3d 156, 2004-Ohio-302, 803 N.E.2d 397, ¶ 2-3. Because notarized documents are self-authenticating pursuant to Evid.R. 902(8), we have cautioned that

10

"lawyers must not take a cavalier attitude toward their notary responsibilities and acknowledge the signatures of persons who have not appeared before them." *Lorain Cty. Bar Assn. v. Papcke* (1998), 81 Ohio St.3d 91, 93, 689 N.E.2d 549. Moreover, we have observed that such "activities are a fraud on the court where the documents are filed and on all those who rely on such documents, [and that] this casual attitude toward statutory requirements breeds disrespect for the law and for the legal profession." Id. at 93-94.

{¶ 34} Respondent acknowledged at his disciplinary hearing that he (1) had failed to indicate on the face of the affidavit that he signed his wife's name pursuant to a power of attorney, (2) had improperly notarized his own signing of his wife's name, and (3) should have had a disinterested third party notarize the document.

{¶ 35} Based upon the foregoing, we overrule respondent's objections with respect to Count Three and adopt the board's findings of fact and misconduct.

*Count Four*

{¶ 36} In May 2006, respondent filed a pro se lawsuit in the Knox County Court of Common Pleas against a member of the Ohio House of Representatives, seeking relief for alleged defamation. The case was assigned to a visiting judge.

{¶ 37} The attorney general, who represented the defendant, moved to dismiss the action for lack of subject-matter jurisdiction, stating that the action belonged in the Ohio Court of Claims. At a hearing in October 2006, the parties agreed that instead of being dismissed, the case would be "held in suspense" or stayed pending a ruling by the Ohio Court of Claims.

{¶ 38} But in December 2006, despite his knowledge of the stay, respondent caused two subpoenas duces tecum to issue in the inactive case, seeking information regarding the identity of persons who had allegedly posted disparaging comments about respondent and his family on the Internet.

11

Respondent failed to serve copies of the subpoenas on opposing counsel as required by Civ.R. 45(A)(3).

{¶ 39} On January 29, 2007, an assistant prosecuting attorney filed a notice on behalf of the clerk of courts advising the court that respondent had caused subpoenas to issue in the inactive case. Respondent filed an objection to the clerk's notice. The common pleas court judge issued an order for respondent to appear and explain his issuance of the two subpoenas in the inactive case and their relationship to the case and "to defend against a suggestion of an apparent abuse of process."

{¶ 40} Respondent then voluntarily dismissed both the stayed action and the Court of Claims action pursuant to Civ.R. 41(A). Then, in an effort to prevent the common pleas court judge from taking any further action, he filed a petition for a writ of prohibition in the Fifth District Court of Appeals, alleging that because the action had been voluntarily dismissed, the judge lacked jurisdiction to pursue charges of civil contempt. The appellate court granted the judge's motion to dismiss the petition on the morning of March 19, 2007 – the date that respondent had been ordered to appear and explain his conduct to the common pleas court judge. Respondent's wife called to advise the common pleas court that he was ill, and he did not appear at the hearing. Consequently, the judge reset the hearing for May 31, 2007.

{¶ 41} Respondent then filed an affidavit to disqualify the judge, alleging that he harbored bias and prejudice against respondent, had violated multiple judicial canons, had engaged in improper ex parte communications with the assistant prosecuting attorney, had decided key evidentiary and legal matters without affording respondent an opportunity to argue his case, and had begun to act as an advocate, rather than as an impartial judge. Chief Justice Moyer denied the affidavit of disqualification on April 27, 2007. *In re Disqualification of Curran* (Apr. 26, 2007), case No. 07-AP-34.

{¶ 42} Although the board found that both the judge and the assistant prosecuting attorney had testified that they had not discussed the case via telephone, we note that the record contains no testimony from the assistant prosecuting attorney. Nonetheless, the panel and board found the judge's testimony on this issue to be more credible than that of respondent.

{¶ 43} On March 29 and 30 and May 3, 2007, respondent issued a number of additional subpoenas in the inactive case to compel persons to attend the May 31, 2007 hearing regarding his issuance of the two earlier subpoenas or to produce documentary evidence. Recipients of those subpoenas included the defendant, the judge presiding over the case, Disciplinary Counsel, the attorney general, the House of Representatives, the Knox County prosecuting attorney, and a party to an unrelated lawsuit involving respondent. The board determined that none of the later subpoenas were relevant to the court's order for respondent to explain his issuance of the two earlier subpoenas – the only matter pending before the court – and characterized their issuance as "an attempt by Respondent to obtain information of imagined conspiracies against him."

{¶ 44} The board also rejected respondent's explanation that he had issued the first two subpoenas to support a request for a gag order in the underlying jury case. It stated that this claim was "not credible and merely an excuse" in light of the anticipated exercise of jurisdiction by the Court of Claims. The board similarly rejected respondent's explanations that he had not intentionally failed to serve the subpoenas on opposing counsel, that he had mailed a copy of one subpoena to opposing counsel, and that one of the subpoenas had never been served. Instead, it concluded that his failure to serve the subpoenas on opposing counsel was an intentional act.

{¶ 45} Based upon these factual findings, the board found that respondent's continuing course of conduct violated DR 1-102(A)(4) and Prof.Cond.R. 8.4(c) (both prohibiting a lawyer from engaging in conduct

13

involving dishonesty, fraud, deceit, or misrepresentation), DR 1-102(A)(5) and Prof.Cond.R. 8.4(d) (both prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), DR 1-102(A)(6) and Prof.Cond.R. 8.4(h) (both prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law), DR 7-106(A) (requiring compliance with a tribunal's rulings made in the course of a proceeding) and Gov.Bar R. IV(2) (requiring a lawyer to maintain a respectful attitude toward the courts) and that his conduct after February 1, 2007, violated Prof.Cond.R. 3.1 (prohibiting a lawyer from bringing or defending a proceeding that is unsupported by law or lacks a good-faith argument for an extension, modification, or reversal of existing law), 3.5(a)(6) (prohibiting a lawyer from engaging in undignified or discourteous conduct that is degrading to a tribunal), and 8.2(a) (prohibiting a lawyer from knowingly or recklessly making false statements concerning the integrity of a judicial officer).

{¶ 46} Respondent objects to the board's findings with respect to the issuance of subpoenas in the inactive case on the grounds that his conduct did not constitute an abuse of process or constitute frivolous activity. As previously discussed in Count Three, Section 2(B)(1)(g), Article IV of the Ohio Constitution vests this court with exclusive original jurisdiction over attorney-discipline matters. Therefore, a trial court's dismissal of a counterclaim alleging abuse of process, denial of a Civ.R. 11 motion for sanctions, or failure to make a sua sponte finding of frivolous conduct cannot divest this court of jurisdiction to consider whether respondent's conduct has violated the Code of Professional Responsibility or Rules of Professional Conduct.

{¶ 47} Respondent also argues that (1) he did not knowingly violate the court's stay because it did not expressly prohibit the parties from conducting discovery, (2) his erroneous belief that the May 31, 2007 hearing was a contempt hearing justified his issuance of additional subpoenas in the stayed case, and (3)

his failure to serve the subpoenas on opposing counsel was not intentional. These arguments are without merit for three reasons. First, the court's October 23, 2006 judgment entry of suspense put the parties on notice that the entire case would remain inactive until the Court of Claims issued a ruling regarding its jurisdiction. Second, neither the word "contempt" nor R.C. Chapter 2705 was used in the court's February 23, 2007 order for respondent to explain his issuance of the subpoenas. Therefore, respondent had no reasonable cause to believe that the hearing would be a contempt hearing. Third, because the panel was in the best position to assess the credibility of the witness testimony and rejected respondent's testimony that he did not intentionally fail to serve copies of subpoenas on opposing counsel, we defer to that determination. See *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24 ("Unless the record weighs heavily against a hearing panel's findings, we defer to the panel's credibility determinations, inasmuch as the panel members saw and heard the witnesses firsthand").

**{¶ 48}** Respondent also objects to the board's findings with respect to the affidavit of disqualification filed against the trial judge, claiming that he had a reasonable, factual basis for making the statements in his affidavit of disqualification and that he never claimed that the trial judge had placed an ex parte telephone call to the assistant prosecutor. We conclude, however, that respondent's affidavit of disqualification in this matter plainly accuses the assigned judge of participating in ex parte communications (regardless of who may have initiated the communication) and prejudging the case before him without hearing respondent's evidence. Therefore, these arguments are without merit. Accordingly, we adopt the board's findings of fact and misconduct.

*Count Five*

**{¶ 49}** Count Five relates to respondent's representation of a client in a postconviction proceeding. Judge Eyster had presided over a jury trial in which

the client had been convicted of three counts of intimidation and one count of having weapons while under disability. An appellate court later overturned the intimidation convictions but affirmed the conviction for having weapons while under disability. *State v. Wilhelm*, Knox App. Nos. 03-CA-25 and 03-CA-26, 2004-Ohio-5522, ¶ 64.

**{¶ 50}** Claiming that the judge harbored a bias against his client, his client's family, and himself, respondent filed an affidavit of disqualification against him. In that affidavit, respondent averred not only that the judge bore a "substantial grudge" based upon the appellate court's ruling but also that he had engaged in improper ex parte communications with the county prosecutor and had "made up his mind to reject" the client's request to restore his firearm rights.

**{¶ 51}** Chief Justice Moyer denied the affidavit of disqualification. *In re Disqualification of Eyster* (Apr. 4, 2007), case No. 07-AP-23. The board observed that the Chief Justice had relied on the affidavits of the judge, the prosecuting attorney, and the assistant prosecuting attorney denying any ex parte communications, ill will, or bias. At respondent's disciplinary hearing, the judge and the prosecuting attorney expressly denied having had any ex parte conversations about pending cases. The board also rejected as false respondent's allegations in the affidavit of disqualification that the judge and a visiting judge had engaged in inappropriate ex parte communications about another of respondent's cases while it was pending before the visiting judge.

**{¶ 52}** Therefore, the board concluded that respondent's conduct with respect to this count violated Prof.Cond.R. 3.1, 3.5(a)(6), 8.2(a), 8.4(c), 8.4(d), and 8.4(h) and Gov.Bar R. IV(2).

**{¶ 53}** Respondent objects to these findings of misconduct, arguing that he had a reasonable factual basis for making the allegations in his affidavit of disqualification. Respondent's evidence, however, consisted mainly of his own testimony that he had observed the judge enter his chambers with the prosecutor

and the assistant prosecutor on more than one occasion and his *speculation* that they were engaging in improper ex parte communications regarding pending cases.

{¶ 54} Because the record does not weigh heavily against these findings, we defer to the panel's credibility determinations and adopt the board's findings of fact and misconduct. See *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24.

*Count Six*

{¶ 55} In December 2007, respondent, on behalf of his wife and two other plaintiffs, filed a derivative action against certain officers, directors, and employees of the Apple Valley Property Owners Association ("AVPOA"). The case was assigned to Judge Eyster.

{¶ 56} Respondent filed an affidavit of disqualification on behalf of his wife, seeking to remove Judge Eyster from the action. In that affidavit, respondent's wife alleged that Judge Eyster harbored a personal bias against respondent and his family and that he had a conflict of interest based upon his wife's employment as the President and Director of the Foundation for Knox Community Hospital. Because the AVPOA is the only nongovernmental organization with a voting member or director of the foundation, and because nine of the foundation's 36 directors are also members of the AVPOA, respondent reasoned that the defendants "essentially employ[ed] and otherwise supervise[d] the judge's spouse."

{¶ 57} Accordingly, respondent and his wife alleged that Judge Eyster's continued participation in the case would violate the following Canons of the former Code of Judicial Conduct:[3] 3(E)(1)(a) (requiring a judge to disqualify himself in a proceeding in which he has a personal bias or prejudice concerning

---

3. These Canons were superseded by a new Code of Judicial Conduct on March 1, 2009.

the party or the party's lawyer), 3(E)(1)(c) (requiring a judge to disqualify himself in a proceeding in which he or his spouse has an economic interest in the subject matter in controversy or in a party to the proceeding), and 3(E)(1)(d)(i) and (iv) (requiring a judge to disqualify himself in a proceeding in which he or his spouse is a party to the proceeding, or an officer, director, or trustee of a party, or is known by the judge to have an economic interest that could be substantially affected by the proceeding). 78 Ohio St.3d CLXXVI. Chief Justice Moyer denied the affidavit of disqualification. *In re Disqualification of Eyster* (Feb. 8, 2007), case No. 08-AP-001.

{¶ 58} Respondent filed an amended complaint in the underlying case in November 2008. The following January, the trial court dismissed or granted judgment on the pleadings on all but one count of that complaint. The only issue that remained was whether AVPOA had an obligation to deliver certain financial records to respondent's clients. Respondent appealed the dismissals on the day that they were entered.

{¶ 59} While his appeal was pending, respondent issued a subpoena to Judge Eyster's wife, seeking a list of all donors to the Knox County Community Hospital and the foundation for the hospital during her employment. That subpoena was not related to the only pending issue in the case. The board concluded that respondent's goal in issuing the subpoena to the judge's wife was to "resurrect" his previous affidavit of disqualification.

{¶ 60} Respondent then filed a request that the judge recuse himself. In that document, he alleged that the plaintiffs "believe the trial court is biased against them because the trial court has ruled against them at every opportunity, especially when a large donor to the hospital that employs the Judge's wife has been involved." Specifically, respondent alleged that a local bank, which was not a party to the litigation, nevertheless had "a major role in the underlying litigation, [and] ha[d] contributed at least $100,000.00 to the local hospital that employs [the

judge's] spouse." Respondent further stated that unless the judge recused himself, plaintiffs would be forced to file another affidavit of disqualification with the Chief Justice.

**{¶ 61}** Based upon these findings of fact, the board concluded that respondent's conduct violated Prof.Cond.R. 3.1, 8.4(d), and 8.4(h). It concluded, however, that the evidence did not clearly and convincingly establish that respondent's conduct with respect to Count Six had violated Prof.Cond.R. 8.4(c).

**{¶ 62}** Respondent submits nine objections to the board's findings of misconduct with respect to Count Six. The essence of these objections is twofold. First, respondent contends that his discovery efforts were valid and directed at obtaining evidence to support a new claim for seeking Judge Eyster's disqualification. Second, he asserts that because the trial court did not rule that his conduct was frivolous or an abuse of process, and the judge's wife was not harmed by his issuance of the subpoena, his conduct cannot constitute a disciplinary violation.

**{¶ 63}** Despite respondent's claims to the contrary, the record clearly and convincingly demonstrates that the basis for both his second request for Judge Eyster's recusal and his January 8, 2008 affidavit of disqualification was his belief that the judge (1) harbored a bias against him and his family and (2) had a conflict of interest in the litigation as a result of his wife's employment. Respondent first alleged that AVPOA, a party to the action, employed the judge's wife because it had the right to appoint one director of the hospital foundation for which she worked. Respondent's second request for recusal was a variation on that theme, focusing upon the alleged financial contribution of a nonparty bank to the wife's employer.

**{¶ 64}** We acknowledge that Chief Justice Moyer had previously disqualified the judge in another case based upon the "apparent interest [of the judge and his wife] in the financial success of the hospital and, therefore, the

financial success of those entities that make significant contributions to it." *In re Disqualification of Eyster* (Feb. 06, 2006), case No. 06-AP-2. In that case, however, a conflict arose because a party to the action made significant financial contributions to the hospital's capital campaign.

{¶ 65} Here, in contrast, respondent subpoenaed Judge Eyster's wife in an effort to uncover evidence that a *nonparty* had made a significant financial contribution to her employer. Respondent presented no evidence that the bank had any connection to the litigation other than that it might have possessed some of AVPOA's financial records. Thus, the basis of respondent's second request for recusal – a nonparty's financial contribution to the hospital – was even more attenuated than his original argument that AVPOA employed the judge's wife. These facts alone would not be sufficient to require Judge Eyster to disqualify himself pursuant to Jud.Cond.R. 2.11 or Canon 2(E) of the former Code of Judicial Conduct, 78 Ohio St.3d CLXXVI (requiring a judge to disqualify himself or herself based upon certain relationships to or interests in the parties or the subject matter of the litigation).

{¶ 66} The discovery tactics that respondent elected to employ to further his crusade to disqualify Judge Eyster are also troubling. While respondent could have served the subpoena upon the hospital's or the foundation's custodian of the records, thereby permitting the hospital or foundation to route the subpoena to the appropriate person for compliance, he elected to personally target Judge Eyster's wife. Despite respondent's claims to the contrary, the purpose of this tactic was to manufacture yet another argument that the judge could no longer serve as an impartial judge in the underlying proceeding by emphasizing a thin connection between the judge's wife and the defendants in the underlying lawsuit.

{¶ 67} Based upon the foregoing, we reject respondent's contention that his discovery efforts were a legitimate means to seek evidence to support respondent's attempt to have the judge disqualified from the lawsuit. And we

have already rejected his contention that a trial court's failure to find an abuse of process or sanction him for frivolous conduct prevents this court from finding a disciplinary violation based upon the same conduct. See Counts Three and Four, supra. Accordingly, we overrule respondent's objections with respect to Count Six and find that his conduct in directly subpoenaing Judge Eyster's wife and submitting his second request for recusal in the underlying action violated Prof.Cond.R. 3.1 and 8.4(d) and (h). We also agree with the board's conclusion that the alleged violation of Prof.Cond.R. 8.4(c) has not been proven by clear and convincing evidence and therefore dismiss it.

*Count Seven*

{¶ 68} In June 2005, respondent and his wife were named as defendants in a lawsuit filed in the Mount Vernon Municipal Court. The case was transferred to the court of common pleas and assigned to Judge Eyster.

{¶ 69} In January 2006, respondent prepared an affidavit of disqualification for his wife to sign, in which he stated, "Judge Otho Eyster has clearly violated Canon 3(E)(1), (1)(a), (1)(c), (1)(d)(iv), and (2) of the [former] Ohio Judicial Code of Conduct, and should be disqualified from sitting in this case." On February 6, 2006, Chief Justice Moyer granted the affidavit of disqualification to avoid the appearance of impropriety, stating, "While I see no evidence in the record before me to suggest that Judge Eyster has shown any improper bias or prejudice in favor of the plaintiff, I conclude that he should not remain as trial judge on this case." *In re Disqualification of Eyster* (Feb. 2, 2006), case No. 06-AP-2.

{¶ 70} The board concluded that respondent's statements in the affidavit of disqualification violated DR 1-102(A)(5), 1-102(A)(6), 7-102(A)(5) (prohibiting a lawyer from knowingly making a false statement of law or fact), and 7-102(A)(6) and Gov.Bar R. IV(2).

**{¶ 71}** Respondent asserts that he had a reasonable basis in fact to assert that Judge Eyster had clearly violated Canons 3(E)(1), (1)(a), (1)(c), (1)(d)(iv), and (2) of the former Code of Judicial Conduct. 78 Ohio St.3d CLXXVI. Specifically, he contends that Judge Eyster should have disqualified himself from the case because his impartiality could reasonably be questioned based upon the economic interest of his wife in maintaining charitable contributions to her employer. Respondent may have had cause to believe that the judge had reason to recuse himself. However, respondent could not have had a reasonable basis in fact to believe that the judge *had clearly violated* each of the Canons cited in his affidavit of disqualification because two of the Canons require a judge to have knowledge of an existing conflict while the third imposes a duty upon a judge to make reasonable effort to obtain such knowledge. See Canons 3(E)(1)(c), 3(E)(1)(d)(iv), and 3(E)(2) of the former Code of Judicial Conduct, 78 Ohio St.3d CLXXVI.

**{¶ 72}** In this instance, respondent did not suggest that based upon the facts known to him, the judge may have violated one of several alternative rules. Instead, he unequivocally stated that the judge had *clearly violated* multiple provisions of the Code of Judicial Conduct, thereby rendering at least one of his statements patently false. Therefore, we accept the board's finding that respondent violated DR 1-102(A)(5), 1-102(A)(6), 7-102(A)(5), and 7-102(A)(6) and Gov.Bar R. IV(2).

### Sanction

**{¶ 73}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on

Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

{¶ 74} As mitigating factors weighing in favor of a less severe sanction, the board found that respondent does not have a prior disciplinary record, has made full and free disclosure to the board, and has demonstrated a professional, respectful, and cooperative attitude in the disciplinary proceedings. BCGD Proc.Reg. 10(B)(2)(a) and (d).

{¶ 75} The board also found a number of aggravating factors weighing in favor of a more severe sanction. First, the board found that respondent's actions demonstrated a dishonest and selfish motive. BCGD Proc.Reg. 10(B)(1)(b). It observed that respondent abused his position as a lawyer by issuing subpoenas to investigate persons who had posted negative statements about him on the Internet and persons with whom he was personally involved in litigation. The board further found that respondent's allegations against judges and prosecutors, and his explanations of his actions, were false and dishonest.

{¶ 76} The board also found that respondent had engaged in a pattern of misconduct and committed multiple offenses by serving subpoenas for his own personal interests, repeatedly making false allegations against judges, prosecutors, and assistant prosecutors, and utilizing his position as a lawyer as a "license to harass." BCGD Proc.Reg. 10(B)(1)(c) and (d). It stated that respondent had refused to acknowledge the wrongful nature of his conduct, citing the panel's observation that his apologies and acknowledgment of wrongdoing lacked sincerity and were primarily "lip-service," and that his demeanor and testimony demonstrated that he "believed his actions were justified and it is the judges and

the other individuals, of whom he complains, who are wrong." BCGD Proc.Reg. 10(B)(1)(g). Last, the board cited the vulnerability and resulting harm to the victims of respondent's misconduct, including the judges and prosecutors whose reputations were harmed, innocent third parties who were inconvenienced by respondent's subpoenas, and Judge Eyster's wife, who testified that respondent's subpoena caused her significant emotional distress. BCGD Proc.Reg. 10(B)(1)(h).

{¶ 77} Relying upon *Disciplinary Counsel v. Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425; *Disciplinary Counsel v. Frost*, 122 Ohio St.3d 219, 2009-Ohio-2870, 909 N.E.2d 1271; and *Disciplinary Counsel v. Baumgartner*, 100 Ohio St.3d 41, 2003-Ohio-4756, 796 N.E.2d 495, and noting that respondent's conduct occurred over a four-year period and involved multiple cases, relator recommends that respondent be indefinitely suspended from the practice of law. Citing extensive case law, respondent argued that the appropriate sanction for his misconduct is a public reprimand.

{¶ 78} Two of the three panel members found the case law cited by relator to be more on point than the case law submitted by respondent. Recognizing that we have stated that "[u]nfounded attacks against the integrity of the judiciary require an actual suspension from the practice of law," *Gardner* at ¶ 36, and recognizing that respondent's conduct resembled that of the attorney in *Frost*, the majority of the panel recommended that respondent be indefinitely suspended from the practice of law.

{¶ 79} The third member of the panel, however, stated that he would reject findings in Counts Three and Four that respondent had engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation. Citing his belief that the respondent was "generally remorseful" for his conduct, which occurred when he was a relatively inexperienced attorney, and implying that the other members of the panel had not sufficiently "divorce[d] [their] personal admiration for the

respected jurist, who currently serves as the Chairman of the Board of Commissioners on Grievances and Discipline, at the center of most of the charges against Respondent," the dissenting panelist stated that he would recommend a two-year suspension with 18 months stayed.

{¶ 80} The board adopted the findings of fact, conclusions of law, and recommendation of the panel's majority and recommends that respondent be indefinitely suspended from the practice of law.

{¶ 81} Respondent challenges the board's (1) rejection of certain mitigating evidence, (2) conclusions that his actions were dishonest and selfish and that they resulted in harm to vulnerable persons, and (3) recommendation that he be indefinitely suspended from the practice of law. Having carefully considered each of these arguments, we conclude that the record does not weigh heavily against the hearing panel's findings. Accordingly, we overrule respondent's objections in this regard and accept the findings of the panel and board with regard to the aggravating and mitigating factors present in this case. See, e.g., *Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 8; *Cuyahoga Cty. Bar Assn. v. Wise,* 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24.

{¶ 82} As an additional factor, during the course of these disciplinary proceedings, respondent sought the assistance of the Ohio Lawyers Assistance Program ("OLAP") and, in July 2008, entered into a monitoring contract that required him to obtain a drug and alcohol assessment, resume counseling, contact a psychiatrist for an evaluation of his medications, call OLAP three times a week, and have his past treating professionals provide OLAP with written reports regarding his diagnosis, treatment plan, prognosis, and compliance.

{¶ 83} During his deposition in October 2008, respondent testified that he had been seeing a psychiatrist to regulate certain medications and working with a psychologist on relaxation techniques to control inappropriate aggression that

might have been a contributing factor to his misconduct. Although respondent was in compliance with the OLAP contract for several months, he elected to terminate his participation in April 2009. Therefore, we consider these unaddressed psychological issues as a factor in aggravation.

{¶ 84} Respondent also objects to the board's reliance upon *Gardner*, *Frost*, and *Baumgartner* and suggests that his conduct is more akin to that of the attorneys in *Disciplinary Counsel v. Mills* (2001), 93 Ohio St.3d 407, 408, 755 N.E.2d 336 (imposing a public reprimand for a single profanity-laced outburst during which a magistrate believed that the attorney was going to physically assault him); *Disciplinary Counsel v. Grimes* (1993), 66 Ohio St.3d 607, 609-610, 614 N.E.2d 740 (imposing a public reprimand on an attorney who made inappropriate statements about a judge to a journalist and made additional inappropriate statements to a judge during a hearing; the parties had stipulated that the statements were the "result of emotional stresses created by a set of unusual circumstances that are unlikely to recur"); *Disciplinary Counsel v. Jackson* (1999), 84 Ohio St.3d 386, 387-388, 704 N.E.2d 246 (imposing a public reprimand on an attorney who failed to maintain his composure and used obscenities, vulgar language, and racial epithets during a deposition); *In re Complaint against Harper* (1996), 77 Ohio St.3d 211, 229, 673 N.E.2d 1253 (imposing a public reprimand on a judge who approved campaign advertisements that diminished public confidence in the judiciary); *Columbus Bar Assn. v. Riebel* (1982), 69 Ohio St.2d 290, 23 O.O.3d 279, 432 N.E.2d 165 (imposing a public reprimand on an attorney who directed offensive and abusive language toward an opposing party on several occasions); and *Cincinnati Bar Assn. v. Gebhart* (1982), 69 Ohio St.2d 287, 289, 23 O.O.3d 277, 431 N.E.2d 1031 (imposing a public reprimand on an attorney who made false statements to a court and expressed a discourteous demeanor toward opposing counsel). Therefore,

respondent urges this court to publicly reprimand him or to impose a fully stayed six-month suspension.

{¶ 85} The cases cited by respondent, however, address single incidents of misconduct or several incidents that occurred during the course of a single case. Respondent's conduct, in contrast, involves multiple incidents of misconduct that have occurred in a series of cases spanning several years. Respondent has (1) recklessly filed affidavits of disqualification and other court documents containing unfounded accusations against two judges, (2) twice misused his power as an attorney to issue subpoenas to further his personal agenda, (3) misused his authority as a notary public, (4) falsely accused a judge and a prosecutor of engaging in ex parte communications about pending cases, and (5) falsely accused two judges of engaging in ex parte communications regarding another pending matter. His pattern of unfounded, intemperate, and unprofessional attacks on the judicial system and his misuse of the power entrusted to him by virtue of his stature as an attorney demonstrate a profound disrespect for the legal profession.

{¶ 86} This conduct is most comparable to that of the attorney in *Frost,* 122 Ohio St.3d 219, 2009-Ohio-2870, 909 N.E.2d 1271. In that case, the attorney falsely accused several Cuyahoga County Common Pleas Court judges and the county prosecutor of bias and corruption in the execution of their official duties, repeatedly leveled unfounded accusations of racial bias and other impropriety against a federal district court judge, and filed a baseless defamation suit against two attorneys who served as her opposing counsel in a sexual-harassment case. Id. at ¶ 5, 18, 25.

{¶ 87} Aggravating factors in *Frost* included acts of dishonesty, a pattern of misconduct involving multiple offenses, the attorney's failure to acknowledge the wrongfulness of her conduct, and the considerable harm to the public officials she attacked as well as the judiciary as a whole. Id. at ¶ 37, citing BCGD

Proc.Reg. 10(B)(1)(b), (c), (d), (g), and (h). Moreover, like respondent's misconduct in this case, we observed that Frost's misconduct may have been a "by-product of unaddressed mental-health issues." Id. at ¶ 43. Therefore, we indefinitely suspended Frost from the practice of law and conditioned her reinstatement upon the submission of proof, to a reasonable degree of medical certainty, that she was mentally fit to return to the competent, professional, and ethical practice of law. Id.

{¶ 88} Based upon the foregoing, we agree that the appropriate sanction for respondent's misconduct is an indefinite suspension. And based upon our concern that respondent has underlying mental-health issues that may have contributed to his misconduct, not only must respondent comply with the requirements for reinstatement set forth in Gov.Bar R. V(10)(B), but he must also provide proof that to a reasonable degree of medical certainty, he is mentally fit to return to the competent, professional, and ethical practice of law. Costs are taxed to respondent.

Judgment accordingly.

BROWN, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Michael Murman and Edward G. Kagels, for relator.

Scott Pullins, pro se.

_____