MAHONING COUNTY BAR ASSOCIATION *v*. KISH.

[Cite as *Mahoning Cty. Bar Assn. v. Kish,* 131 Ohio St.3d 105, 2012-Ohio-40.]

*Attorneys at law—Numerous violations of the Rules of Professional Conduct—Indefinite license suspension.*

(No. 2011-0846—Submitted June 21, 2011—Decided January 11, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 10-020.

_____

**Per Curiam.**

{¶ 1} Respondent, Brian P. Kish of Youngstown, Ohio, Attorney Registration No. 0074488, was admitted to the practice of law in Ohio in 2001.

{¶ 2} On October 6, 2010, relator, the Mahoning County Bar Association, filed a second amended complaint with the Board of Commissioners on Grievances and Discipline alleging that Kish had committed multiple acts of misconduct in 12 client relationships. Relying on the parties' joint stipulation of facts and violations, as well as testimony at a formal hearing, the board made findings of fact and misconduct and recommended respondent's indefinite suspension from the practice of law. Other than a few exceptions noted below, we adopt the board's findings of facts and misconduct, order restitution, and indefinitely suspend Kish from the practice of law in Ohio.

**Misconduct**

*Count A*

{¶ 3} After suffering a personal injury in August 2007, Norma Callen agreed to pay Kish a contingent fee for his assistance in resolving issues concerning the payment of insurance proceeds. By April 2009, Kish had

performed little to no legal work on the matter despite numerous calls from Callen, so Callen terminated the representation.

*Count B*

{¶ 4}   In August 2007, Marilyn Mehit paid Kish $1,250 to pursue a collection action against "Jim James."  Respondent filed a complaint, after which he determined that the real debtor was Daniel James.  Kish was unsuccessful, however, in locating this individual.  The stipulated facts state that Mehit "became disheartened by the delay" and retained a different attorney, who located and won a judgment against the debtor in September 2008.  Mehit then filed a complaint against Kish, who agreed to pay her a refund of $700.

{¶ 5}   The board found that Kish had violated numerous Rules of Professional Conduct in representing Mehit.  While we accept the board's finding of facts, we are not bound by the parties' stipulation to misconduct.  See, e.g., *Trumbull Cty. Bar Assn. v. Donlin* (1996), 76 Ohio St.3d 152, 155, 666 N.E.2d 1137.  We find that the stipulated facts do not clearly and convincingly show that Kish committed the alleged misconduct and accordingly dismiss this count.

*Count C*

{¶ 6}   The parties have agreed to dismiss Count C, and the board made no findings with regard to it.  We therefore agree that Count C should be dismissed.

*Count D*

{¶ 7}   In May 2009, Katherine Woods agreed to pay Kish $1,500 in three installments to represent her after she was charged with driving while intoxicated.  Kish accepted the first $500 but performed no legal work and never spoke to Woods again.  Woods terminated Kish's services, retained another attorney, and asked Kish to return her money.  Kish has not done so.

### Count E

**{¶ 8}** Faced with charges that he had violated zoning laws, Michael Jackson paid Kish $500 to represent him. Kish promptly filed a written not-guilty plea, but never spoke with Jackson again. Kish did not respond to Jackson's contacts and did not attend a scheduled hearing. Although Jackson had retained another attorney, who notified Kish that he had been retained, Kish appeared in court the next month on behalf of Jackson, succeeded in having the charges dismissed, and notified Jackson by fax.

### Count F

**{¶ 9}** In August 2009, Kish met with Keith Brooks and his wife to discuss preparing a will. Kish accepted $350 but never prepared their will, failed to respond to many of their communications, and did not return their money. They eventually filed a small-claims complaint against Kish, who did not appear and had a judgment entered against him.

### Count G

**{¶ 10}** In June 2009, Kish met with Carol Venardos to discuss preparing a will and power of attorney and accepted $450 to perform the work. Venardos's niece made numerous attempts to reach Kish, asking him either to advise when the work would be completed or to return the money. Kish never responded to these communications.

### Count H

**{¶ 11}** In October 2007, Dennis Barr paid Kish a retainer on behalf of a friend. At their initial meeting, Kish, who had just left a local law firm, commented on his financial hardships; in response, Barr offered to help him and lent Kish $3,000. Barr later hired Kish to represent him in a pair of actions, for which he paid Kish another $2,000. At a pretrial conference for one of the actions, Kish repaid Barr $1,500, and a hearing was set for six months later. From that point forward, Kish ceased responding to Barr's efforts to reach him,

and although Barr appeared for the scheduled hearing, Kish did not. Barr then sent letters terminating Kish's services and demanding repayment of the loan, but Kish has not repaid the money.

*Count I*

{¶ 12} In June 2009, Keith Carter paid Kish $1,500 to represent him in a drunk-driving matter. Kish advised Carter that he could not drive for 15 days, after which he could apply for limited driving privileges. Kish filed a not-guilty plea, and a trial was set for November. Kish never filed a request for driving privileges. After using two weeks' vacation, Carter was called in to work, and he drove despite his suspended license. He was pulled over and arrested and spent the night in jail. After learning that Kish had not filed a motion to restore his driving privileges, Carter made numerous, unsuccessful attempts to contact Kish. Thereafter, Carter retained a new attorney and terminated Kish's services. Kish has not returned any of Carter's money.

*Count J*

{¶ 13} In February 2008, Susan Walters retained Kish to defend her against a personal-injury claim. Walters paid Kish $1,500 up front and agreed to pay him $100 per hour. Kish attended a pretrial, but then failed to answer a discovery request, even after being ordered by the court to respond. The court sanctioned him. Kish also failed to respond to a motion for judgment on the pleadings, which was granted, resulting in a judgment of $11,000 against Walters, plus costs and interest. Walters subsequently lost her driver's license and is unemployed. Throughout this time, Walters made numerous attempts to contact Kish, but had little success. Kish has not returned any part of the $1,500 retainer.

*Count K*

{¶ 14} In March 2008, David Williams paid Kish $500 to defend him in a lawsuit. Kish did not enter an appearance in the case, which had been ongoing, but entered directly into negotiations with opposing counsel. The resulting

settlement required Williams to pay $1,455. Williams, however, never heard from Kish after he accepted the fee and did not know the status of his case until after he filed a grievance with the bar association.

**{¶ 15}** The board found that Kish had violated Prof.Cond.R. 1.4(a)(3) and (4). We agree that the evidence clearly and convincingly shows a violation of Prof.Cond.R. 1.4(a)(3), which required Kish to keep Williams "reasonably informed about the status of the matter"; the stipulation states that after accepting the fee, Williams "never heard from the Respondent." But the evidence does not show a violation of Prof.Cond.R. 1.4(a)(4). That rule requires lawyers to "comply as soon as practicable with reasonable requests for information from the client," but the stipulated facts do not disclose any requests for information from Williams. Accordingly, we dismiss that finding of misconduct.

*Count L*

**{¶ 16}** In April 2009, the Glenmoor Volunteer Fire Department paid Kish a retainer of $3,000 to represent it in a breach-of-contract action. Kish performed six to eight hours of work on the case, but then ceased responding to calls and e-mails. That August, the president of the department e-mailed Kish seeking an update and asking him to return the retainer if he did not have time to handle the case. Kish neither responded nor returned the fee, and the department filed a grievance.

*Rule Violations*

**{¶ 17}** The board concluded that the conduct described above amounted to violations of Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence and promptness in representing a client), 1.4, 1.5(a) (requiring a lawyer not to charge an illegal or clearly excessive fee), 1.15(d) (requiring a lawyer to promptly deliver client funds and provide a full accounting of such funds), and 1.16(e) (requiring a lawyer to promptly return unearned fees).

**{¶ 18}** Except as noted above, we adopt the board's findings.

**Sanction**

{¶ 19} When imposing sanctions for attorney misconduct, we consider relevant factors, including the duties the lawyer violated, the lawyer's mental state, and sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

{¶ 20} As aggravating factors, the parties stipulated and the board found that respondent had demonstrated a pattern of misconduct, committed multiple offenses, and failed to make restitution. See BCGD Proc.Reg. 10(B)(1)(c), (d), and (i).

{¶ 21} As to mitigating factors, the board found that respondent lacked a prior disciplinary record, had fully and freely disclosed his misconduct, had been cooperative after the institution of formal proceedings, and had presented evidence of good character and reputation. See BCGD Proc.Reg. 10(B)(2)(a), (d), and (e). The board did not accept the parties' stipulation to mental-health mitigation, however. Although the board was impressed with Kish's candor and noted "the depth of [his] mental illness"—a prolonged, deep depression following his brother's coma and permanently disabling injuries in 1987, his father's death in 1994, and his wife's attempted suicide and demand for divorce in 2009—it did not agree that Kish had sustained a period of successful treatment. And contrary to the board's findings, Kish does have a prior disciplinary violation—he was

briefly suspended from the practice of law in December 2005 for failing to register with the Supreme Court Office of Attorney Registration. *In re Attorney Registration of Kish*, 107 Ohio St.3d. 1431, 2005-Ohio-6408, 838 N.E.2d 671.

{¶ 22} Before the board, respondent argued for a one-year suspension with conditions, but the board recommended that respondent be indefinitely suspended from the practice of law. The board was "not convinced there is a prognosis that [Kish] will be able to return to competent, ethical practice under specific conditions." And Kish himself, the panel noted, had "testified that he did not know when and if he would be able to return to the practice of law."

{¶ 23} The board recommended that respondent "be indefinitely suspended from the practice of law" and that restitution be ordered. We adopt the board's recommended sanction, which is appropriate in this case. See, e.g., *Disciplinary Counsel v. Pullins*, 127 Ohio St.3d 436, 2010-Ohio-6241, 940 N.E.2d 952, ¶ 88 (imposing indefinite suspension when respondent's misconduct is related to underlying mental-health issues); *Disciplinary Counsel v. Andrews*, 124 Ohio St.3d 523, 2010-Ohio-931, 924 N.E.2d 829, ¶ 18 (imposing indefinite suspension when respondent had no aggravating factors but committed multiple violations); see also, e.g., *Disciplinary Counsel v. Holland*, 106 Ohio St.3d 372, 2005-Ohio-5322, 835 N.E.2d 361, ¶ 25 (requiring payment of restitution as determined by relator). The record, the balance of aggravating and mitigating factors, and precedent all support the board's recommendation.

{¶ 24} Accordingly, Brian P. Kish is indefinitely suspended from the practice of law in the state of Ohio and is ordered to make restitution within 30 days as follows: $700 to Marilyn Mehit, $500 to Katherine Woods, $500 to Michael Jackson, $350 to Keith Brooks, $450 to Carol Venardos, $3,500 to Dennis Barr, $1,500 to Keith Carter, $1,500 to Susan Walters, $500 to David Williams, and $3,000 to the Glenmoor Volunteer Fire Department. Additionally, prior to reinstatement, Kish must demonstrate that he has fulfilled the following

conditions: (1) he must provide proof of continuing mental-health counseling and proof that he is fully competent to return to the practice of law, (2) he must comply with all requirements of his treating physician during the suspension period, (3) he must comply with all CLE requirements, and (4) he shall be subject to a two-year probationary period, during which he must (a) continue to abide by the foregoing requirements to the extent they are of a continuing nature, (b) be monitored by relator, and (c) permit relator to monitor his attorney trust account. Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Ronald Slipski and David Comstock Jr., for relator.

_____